## Thomas P. Hershberger, Plff. in Err., *v.* Dennis Lynch.

Where a carriage and horses are the property of a livery-stable keeper and the driver is in his general service, and the driver, carriage, and horses are temporarily engaged in the service of an undertaker and under his direction and control, the livery-stable keeper is legally liable for the negligence of the driver while so employed.

Where a point is presented to the court in such a way that it cannot well

NOTE.—The liability of the livery-stable keeper rested on the finding that the driver and horses did not pass entirely under the control of the hirer under the contract of employment. McCullough v. Shoneman, 105 Pa. 169, 51 Am. Rep. 194, and Hemingway v. McCullough, 15 W. N. C. 328, illustrate the rule as to nonliability, when the control of the employer has ceased. Fuhrmeister v. Wilson, 163 Pa. 310, 30 Atl. 150, shows the contrary, when the servant's negligent act occurred while in the performance of the master's work.

be answered without explanation, it is not error to so qualify it as to give the jury proper instructions on the law governing the case.

(Argued October 28, 1887.  Decided November 11, 1887.)

October Term, 1887, No. 124, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Common Pleas No. 1 of Allegheny County to review a judgment in favor of the plaintiff in an action of trespass on the case for injuries.   Affirmed.

The action was brought by Dennis Lynch against Thomas P. Hershberger, to recover damages for injuries alleged to have been sustained by Lynch resulting from a collision between a carriage owned by Hershberger and a wagon owned and driven by Lynch.   On July 15, 1886, Foley & Son, undertakers, hired from Hershberger, a livery-stable keeper, a carriage to be used at a funeral.

Withrow, the driver of the carriage, testified that he was paid by the week by Hershberger, and that when he left the stable on the day of the accident he was ordered by Hershberger to go to Foley & Son's, which he did.   Hershberger testified that Withrow was in his employment at the time; and that he had charged Foley & Son for the carriage the same as he would have charged anyone else.   He also testified that he had no control over the driver, horses, and carriage while in Foley & Son's possession.

The defendant submitted the following points which were answered at the beginning of the general charge:

1. If Withrow, the driver of the horses and carriage, was at the time of the accident engaged in the service of Foley & Son, and under their direction and control, the defendant, Hershberger, is not liable to plaintiff for injury or damages resulting from the alleged negligence which then and there caused or contributed to said accident.

*Ans.* [Whether or not this point is law depends altogether upon what is meant by, and what you find with respect to, the expression "engaged in the service of Foley & Son and under their direction and control," because the language may not convey the same idea to you that it does to the counsel who presented the point, or that it does to me.   Of course if you go to a livery stable and hire horses and carriage to perform some service for you, to carry you and your family about upon some er-

rand of your own, to a certain extent those horses and the carriage and the driver are in your service and under your direction and control; but that would not make you responsible for the negligence of the driver if he were guilty of negligence while in that service; consequently, it all turns upon what is meant by the expression "engaged in the service of Foley & Son, and under their direction and control," and that depends upon the facts in the case. I will embrace what I have to say on this point in the answer to the second point, which goes a little more in detail as to the facts.]1

2. Although the carriage and horses were the property of defendant, and the driver, Withrow, was in his general service, yet if the carriage and driver were, on the day and at the time of the alleged injury to plaintiff, temporarily engaged in the service of Foley & Son and under their direction and control, the defendant is not legally liable for the alleged negligence of the carriage driver while so employed in the service of Foley & Son.

*Ans.* [You will observe that precisely the same phraseology is used in this as in the preceding point, that is, as to the "employment in the service of Foley & Son, and under their direction and control." If it was the intention of and the arrangement between Foley & Son and Hershberger, that Foley & Son were to have the entire control of this vehicle, driver, and horses on that occasion, such that Mr. Hershberger could exercise no control whatever over them—such, for instance, that Foley & Son could have dismissed the driver Withrow, and put another driver in his stead—and thus have made the engagement to be other than it appeared upon its face, of driver, horses, and carriage, then this point would be law, and Hershberger would not be legally liable for the conduct of the driver. But if the engagement was such as I have indicated, simply employment from Hershberger of horses, carriage, and driver to go where Foley & Son might direct, and to perform such ordinary service as such a vehicle, driver, and horses usually perform when employed, and Foley & Son interfered in no way with the action and conduct of the driver in the performance of his duty as a driver, then the point would not be law, but the case would stand as though the employment had been made directly from Mr. Hershberger.]2

To a certain degree the rule of law which makes the employer

responsible for his driver has its measure of harshness when the employer, as the facts would seem to indicate here, furnished proper horses and carriage and a competent driver. If the driver, through his negligence without any control of Mr. Hershberger, or any possible control, was guilty of negligence by which some person suffered and for which that person is entitled to receive damages, there is a certain degree of harshness in putting the burden upon the owner of the vehicle and the employer of the driver; but such is the law from the necessity of the case. The act of the driver is supposed to be the act of the owner of the horses and vehicle; but that consideration is not seriously to weigh with you. It may become a matter of concern if you come to the question of damages; that is, that the damages should not be stretched beyond the actual limit of the law, the actual compensation the plaintiff is entitled to. But if this employment was simply, as I have indicated, a hiring of horses, carriage, and driver, as you or I might do it, to have it carry us to some point where we wished to go, exercising no control over the driver in the performance of his duty as a driver, then Hershberger would be liable for the negligence of the driver, so far as the law would cast upon the driver a burden for his negligent conduct.

The court, after answering the above points, charged generally as follows:

We come now to the law bearing upon the case apart from those questions. This action is brought to recover damages from the negligence of the driver; and the burden is on the plaintiff to establish to your satisfaction that the driver was guilty of negligence—that is, a want of the due care, attention, caution, and prudence which should be exercised by a driver under the circumstances where and when this accident to the plaintiff occurred. That burden is on the plaintiff. If he has failed to satisfy you that the driver was guilty of negligence at that time and under the circumstances, of course your verdict should be for the defendant; or, if you should find from the facts and circumstances detailed in evidence that Lynch was guilty of negligence upon his part, which contributed and assisted in bringing about the accident from which he now suffers, your verdict would be for the defendant. The law will not hold the scales between the negligence of the driver of one vehicle and

the other; therefore, if Lynch was guilty of negligence which contributed to and assisted in the accident in any degree he could not recover.

Of course, in a good degree, this matter will turn upon your knowledge as to the rules of the road nowadays, when we have passenger car tracks laid upon the streets, as to the practice and usage of drivers of vehicles under these circumstances. And you will understand, if you know Penn avenue and its width, that there are not merely the car tracks there, but there is a space upon either side of the tracks, between the rail next the curb stone and the curb stone, to drive a vehicle. Of course this is merely suggestive to you, and you will find what the facts are. They must be within their cognizance as men of experience and judgment, which experience and judgment you have a right to take into account in determining the facts of the case. You will determine whether it is ordinarily the practice of drivers to turn out either upon the other car track upon which vehicles may be coming in the opposite direction from which they are going, or to the curb stone on the one hand or the other.

In determining the alleged contributory negligence of Lynch, the plaintiff, it may be a question for you to consider whether it would have been prudent and cautious for him, if he saw a probability of the collision between the two vehicles, to turn out of the car track towards the curb stone, or whether he might not justly have assumed, under the circumstances, that if the driver observed he was about to come in collision with his wagon that he, Withrow, might not turn off to the left still further, towards the curb stone, or whether it would have been prudent and cautious for Lynch to have turned off there, or whether proper caution and prudence would have admonished him to stay upon his track and allow Withrow to exercise his judgment and discretion as to whether he would attempt to pass from that track onto the other, or whether he would attempt to pass from the car track onto the street alongside between the car track and the curb stone.

All these are matters upon which you will bring your knowledge and experience to bear, so far as they assist you in determining the questions involved.

Verdict and judgment for plaintiff, for $502.

The assignments of error specified: (1, 2) The answers to

the defendant's points in brackets; and (3) that the general charge and the answers to the points were insufficient, misleading, and erroneous.

*Joseph Hays* and *A. M. Brown,* for plaintiff in error.—The defendant's two points presented plain and distinct propositions, and he was entitled to a distinct, unequivocal, and explicit answer to each of them. Neither of them received a direct or sufficient answer from the learned judge.

This court has decided in many cases that a party is entitled to an explicit answer to every point submitted by his counsel, and it is error not to do so; and that a misdirection is ground of reversal, although no special instructions were asked. Noble v. M'Clintock, 6 Watts & S. 58; Garrett v. Gonter, 42 Pa. 143, 82 Am. Dec. 498.

And if the language of the court, taken in connection with the circumstances of the case, may have misled the jury as to the law, it is error. Kissinger v. Thompson, 12 Serg. & R. 44; Wenger v. Barnhart, 55 Pa. 300; Pennsylvania R. Co. v. Berry, 68 Pa. 272; Stall v. Meek, 70 Pa. 181.

Where the judge assumes a fact, which is not in evidence, the judgment must be reversed. Musselman v. East Brandywine & W. R. Co. 2 W. N. C. 105. See also Pennsylvania Co. v. Toomey, 91 Pa. 256; Tenbrooke v. Jahke, 77 Pa. 392, and Huddleston v. West Bellevue, 111 Pa. 110, 2 Atl. 200, as especially applicable to the errors in this case.

The general rule of law, formulated by all of the more recent authorities, may be clearly stated thus: the immediate employer of an agent or servant who causes an injury is alone responsible for such injury, to him alone the rule of *respondeat superior* applies, and there cannot be two superiors severally responsible. Wray v. Evans, 80 Pa. 102; Bard v. Yohn, 26 Pa. 482. See also Kimball v. Cushman, 103 Mass. 194, 4 Am. Rep. 528; Wood v. Cobb, 13 Allen, 58; McGatrick v. Wason, 4 Ohio St. 566; and Murray v. Currie, L. R. 6 C. P. 24.

*Josiah Cohen* and *A. Israel,* for defendant in error.—The court below would have been fully justified in refusing defendant's first point, with nothing more; and defendant surely cannot complain of the fact that the court below did not refuse this

point. The court below, however, did much more than was required of it.

In his second point defendant asked for an instruction to the jury which was contrary to law; and the court very properly, replied that such was not the law. The court would have done its full duty by refusing defendant's second point, but to be entirely fair to defendant, it virtually affirmed it, with a qualification based upon the evidence in the case, declared under what circumstances defendant would or would not be liable, leaving it fairly to the jury to find the facts.

It is not error to answer several points collectively, provided they all relate to the same matter and are answered fairly and fully. Coates v. Roberts, 4 Rawle, 100.

It is not error for the court, after considering a point affirmatively to qualify it, by stating that if the facts were different from those assumed the law would be otherwise. Lloyd v. Carter, 17 Pa. 216.

PER CURIAM:

The complaint in this case is that the defendant's points were not clearly answered. Those points could not well be answered without some explanation; hence, they were so qualified as to give the jury proper instructions on the law governing the case. The charge as a whole was certainly clear enough, and by it the jury could not have been misled.

Judgment affirmed.