## John H. Radel Company v. Borches.

(Decided March 13, 1912.)

## Appeal from Campbell Circuit Court.

1. Funeral Expenses—Contract Obligation—Liability of Undertaker. —It is a matter of common knowledge that in the distressing surroundings attending a funeral, some one of the family or some friend of the family acts for all and it is right that the obligations, whatever they may be, assumed or owed by the undertaker, should be held as contract obligations owed to all.

2. Contract Undertaker—Faulty Performance—Excuse.—The rule is clear beyond argument that one who undertakes by contract to do for another a given thing cannot excuse himself to the other by a faulty performance, or a failure to perform, by showing that he has engaged another to perform in his place, and that the fault or failure is that of another or independent contrator.

3. Undertaker—Furnishing Carriage—Negligence of Driver—Horse Running Away—Injury to Occupant—Liability.—Where an undertaking concern, in conducting a funeral furnished a carriage and team in which a lady was taken to the funeral, and, on returning therefrom the team by the negligence of the driver which was left unhitch and unattended at a cafe, ran away and injured her, the undertaker is liable to her for the damages she sustained.

4. Trial—Instructions to Jury.—On the trial of the case it was error in the court to refuse to give the following instruction: "If the jury believe from the evidence that the driver of the carriage left it at the invitation or request of the plaintiff or at the request or invitation of any of its passengers in the presence of and without objection by the plaintiff, the law is for the defendant and the jury will so find."

DEMPSEY & NEIBERDING for appellant.

RAMSEY WASHINGTON, HOWARD M. BENTON for appellee.

OPINION OF THE COURT BY JUDGE WINN—Reversing.

The appellant is an undertaking concern. On October 5, 1910, it conducted the funeral of one John Lickert. The appellee attended the funeral. Upon the return trip from the cemetery, the driver of the carriage in which appellee was riding, at the direction of one of the occupants of the carriage, stopped in front of the Heidelberg Cafe. The two men occupants left the carriage and went inside the cafe. The driver wrapped his lines about the brake, and went in also. The team ran away. Mrs. Borches jumped or was thrown from the carriage, and brought her action against the undertak-

ing company to recover for the injuries which she claimed to have received. She recovered a judgment for $597, and the undertaking company appeals.

The plaintiffs alleged that the Radel Company had charge of the funeral; that she went to the funeral in a carriage furnished by defendant for that purpose; that the carriage was managed and under the control of defendant, its agents and employes; and that by reason of their negligence in leaving the horses unfastened and unattended the runaway and her injuries occurred. The answer did not deny that defendant furnished the carriage, but did deny that it was under the control of the defendant, its agents or employes, or that they were guilty of any negligence, or that the injury occurred.

The evidence upon the plaintiff's side, of the facts about the furnishing of the carriage, is, in substance, that plaintiff attended the funeral as a relative of the decedent; that she was put into this carriage by a representative of the Radel Company; that a burial association of which decedent was a member had furnished, through the Radel Company, three carriages for the funeral; that the decedent's sister ordered three extra carriages from a representative of the Radel Company; that it was in one of these extra carriages that plaintiff was at the time of her injury; that the bill had been made out by the Radel Company against the estate of the decedent for the extra carriages, and had been paid by the decedent's sister. The evidence upon defendant's side upon this question is, in substance, that these carriages were hired for the funeral; that they were hired by a representative of the Radel Company from the Queen City Livery Company, an independent concern; that the Radel Company kept no carriages; that it had no control over the carriage driver; that the Livery Company sent the carriages, under orders from the undertaker, to the house, thence to the cemetery, and thence back to the house.

We think it clear that in arranging for the transportation of the decedent's relatives and family the undertaking company owes the same contract obligation to each of them, though it may not know, save in the most general way, the number and names of those who are to be transported. It is a matter of common knowledge that in the distressing surroundings of this nature, some one of the family, or some friend of the family, acts for all; and it is right that the obligations, whatever they

may be, assumed or owed by the undertaker, should be held as contract obligations owed to all. The facts stated above, as appearing upon the two sides, are not in conflict. But the divergence of position comes in that the plaintiff insists that since the carriages were ordered of the undertaking concern and supplied by it, it, in effect, was the liveryman, and is answerable to the plaintiff not otherwise than as if the carriages had been its own; while the defendant's position is that the carriage was furnished by an independent contractor, the Livery Company, and that defendant is not responsible for any negligence of the independent concern's servants or agents.

The error in the Radel Company's conception of its case lies in its misunderstanding of the facts. Under the evidence, it undertook to supply the carriages. There is no evidence that in supplying them it was only to act as agent in procuring them, or that they were to be supplied by another or independent contractor or that it was so understood by those to whom the carriages were to be supplied. Nor was the injury suffered by any third person, as against whom the fact of the independent service could be shown. The rule is clear beyond argument that one who undertakes by contract to do for another a given thing can not excuse himself to the other for a faulty performance, or a failure to perform, by showing that he has engaged another to perform in his place, and that the fault or failure is that of another or independent contractor. It would be different, of course, if it were shown that the substituted performance, the engaging of another to perform, was with the knowledge and acquiescence of the one with whom he undertook his contract obligation. If it were shown here, to illustrate, that either the plaintiff, or the member of the family who engaged the carriages, knew that the Radel Company would not supply the carriages, or understood or assented that they were to be supplied by another, then the plaintiff's claim would be against that other—unless it should be shown by the evidence, as it was not, that the complete direction, authority and control of the carriage and its driver were surrendered for the time being to the Radel Company.

The state of fact just supposed; i. e., that it was understood in the contract with the Radel Company that the carriages were in fact to be supplied by another under a hiring by it, would bring the case within the rule

argued by appellant, that in an ordinary hiring from a livery company the hirer who exercises no control over the driver further than the right to generally direct where to go, is not the master so as to render him liable in damages to a third person for injuries received through the negligence of the driver of the vehicle. The appellant's trouble in this respect, as above pointed out, lies in that the plaintiff was not a "third person;" per contra, she was a party to the contract made with the Radel Company whereunder in so far as the evidence upon the trial disclosed, that company itself was to furnish the carriages. The notes to Frerker vs. Nicholson, 13 L. R. A. N. S., 1122, illustrate the distinction. The case to which the notes are appended seems to us to be unsound as applied to the facts at bar, in that it treats the occupant of the carriage as a third person, and not as one entering into the contractual relation with the inherent contractual right to look for reasonably safe transportation to the one who, so far as the record disclosed bore the whole obligation to supply the carriage. The case of Hershberger v. Lynch, 11 Atl., 642, cited by appellant, was likewise the case of an injury to one driving his own vehicle—a third person—who sought to recover from Hershberger, a livery-stable keeper, damages for an injury by the latter's carriage which was temporarily engaged in the service of another liveryman. The court held with entire soundness that if the other liveryman only had the temporary control of the vehicle, with the right to its use and route, and without control over its servant, the right to discharge him and the like, that Hershberger and not the other liveryman would be liable. We believe it would have been ruled differently had the injury been to one who had hired the carriage from the other liveryman, and without his knowledge, had been supplied by the other liveryman with a carriage not his own.

The case of Boniface v. Relyea, 36 How. Pr., 457, is much relied upon by the appellant. The opinion sustains his position; save that it is not very clear that the undertaker himself agreed to furnish the teams. The proof rather went to show that he was to have entire superintendence of the funeral, and as such, among other things, was to see that carriages were present. The fallacy of the argument of the learned judge in that case lies in that he eliminates altogether the con-

tractual relation. He says, by way of illustrating the unreasonableness of the position, that if he were to hire a hackney coach from a public stand and that the driver should negligently injure another, he, the hirer, would be responsible; and it is upon such line of reasoning that he finds the undertaker there not liable. He should have extended his reasoning further. He should have illustrated the real position by putting himself in the position of one, who for hire, was supplying the carriage to another; and then had the one he had undertaken to carry by contract been injured by the negligence of the driver, he would have more aptly illustrated the facts obtaining in his case. The error of the writer is apparent by the fact that he rests his case largely upon the case of Laugher v. Pointer, 5 B. & C., 547. Had he noted the distinction drawn here he would have observed that in that case the injured person was a third party entirely, who bore no contractual relation either to the owner or hirer of the vehicle.

The case of Little v. Hackett, 116 U. S., 366, cited by appellant, is an authority for no other principle than the one conceded here—that one who hires and uses a public carriage is not responsible for the negligence of the driver, in the absence of complete control and dominion over him. It does not discuss at all the rights of one who contracts from another the right to use a vehicle, and his consequent right, if injured, to recover against that other in the absence of any knowledge or agreement that the other supplied a vehicle not his own.

In the case of Joslin v. Grand Rapids Ice Co., 50 Mich., 516, cited by appellant, Joslin, the plaintiff, was driving his own horse and buggy and was injured by a collision with a wagon driven by an employe of the Ice Company. The case nowhere touches the question of a contract right; but purely turns upon the question as to who may be responsible for injury to a third and disinterested person.

The case of Foster v. Wadsworth-Howland Co., 168 Ill., 514, cited by appellant, is the case of the killing of a child, a third party, and is, therefore, not applicable here.

The case of Driscoll v. Towle, 181 Mass., 416, cited by appellant, was the case of a third person injured by the negligent driving of a wagon. The question was as to whether he was entitled to recover against the owner of the wagon and general master of the driver, or against

one to whom the wagon and driver had been sublet. There was no element of contract present.

The case of Jahn's Admr. v. McKnight & Co., 117 Ky., 655, cited by appellant, was one wherein Jahn, a telegraph messenger boy, while riding his bicycle on the street, had been struck and killed by a delivery wagon drawn by a runaway horse. The wagon in question was under hire to McKnight & Co., by its owner, who was in the habit of letting it out for hauling. In an effort to recover against McKnight & Co., it was held that under this state of fact the driver of the wagon was not the servant of McKnight & Co., and that there was no liability on their part for his negligence.

And so in all the vehicle cases to which our attention has been invited or which we have examined upon our own initiative, with the possible exception of the Boniface case and the Frerker case, the injury was done to some third person where there was an entire absence of any duty owed under contract. It may be that at the time the arrangements were made for the funeral it was understood that in furnishing the teams the Radel Company was merely acting as the agent of the family in obtaining the teams; but we must take the record as we find it. It is a matter of common knowledge that undertakers do supply carriages and teams of their own. The record brought up here shows an engagement by the Radel Company to furnish the carriages. The trial court, therefore, properly overruled defendant's motion for a peremptory instruction in this aspect of the case; nor was there any error in so much of the instruction given, under the facts presented upon the former trial, as assumed that the driver was the agent of the Radel Company. If, upon the return of the case to the trial court any evidence should be introduced showing any understanding or knowledge and acquiescence upon the part of the plaintiff or the one who hired the carriages, either that in procuring them the Radel Company acted as agent or was to furnish the vehicles of another, the court will submit the question to the jury by an appropriate instruction relieving the Radel Company, in case there was such an understanding; and this upon the well established general authority that although a driver may be ordered by those who have dealt with his master to go to this place or that, to take this or that burden, to hurry or take his time, nevertheless, in respect to the driver's conduct and the control of his horses, he remains sub-

ject to no orders but those of the man who pays him, and his master and not the one who has dealt with the master, can be held liable therefor.

It is argued by appellant that in going into the cafe or bar the servant was upon an independent service of his own and that, therefore, there was no obligation upon the master for any damage resulting from it. The conclusion is false, because the premise is false. The accident did not arise as the result of anything done by the driver while absent from the carriage, but from his neglect in leaving the carriage.

Appellant also complains of the admission of the testimony of two witnesses who were called by plaintiff in rebuttal, and who were permitted to testify as to a certain statement the driver of the carriage had made to them about the accident. The driver had been introduced by the defendant and upon cross-examination by plaintiff had been asked whether he made such a statement, which he denied. Both when the question was asked of him and when the witnesses were put on to show that he had made the statement the court properly limited the jury's consideration of the testimony to its effect upon the credibility of the driver's testimony. There was, therefore, no error in its admission. The conversation, of course, was not competent as substantive testimony, since it occurred some three weeks after the time of the injury.

Complaint is also made of the admission of the testimony of Dr. Shaler Berry, a witness introduced on behalf of plaintiff, wherein he testified that he saw her in December after the accident, that she exhibited to him a scar about two inches long across the top of her head, which she said she had received from being thrown out of a carriage on the pike; that she was complaining that since the accident she had suffered from various nervous manifestations, dizziness, headache and the like. The witness further said that a physician could not prove whether a woman was sleepless or dizzy, and that he had to rely upon her statements for that. It was at least two months after the accident when he saw her. The testimony comes within the condemnation of like testimony in C. & O. Railway v. Wiley, 134 Ky., 461; and its admission was error.

There was testimony given by defendant to the effect that the driver left the carriage upon the invitation of its occupants, and an instruction was asked and refused,

in substance, that if the driver left the carriage at the invitation of its occupants, the defendant was not liable. It was error to refuse this instruction. Upon a retrial of the case an instruction will be given in substance as follows:

"If the jury believe from the evidence that the driver of the carriage left at the invitation or request of the plaintiff or at the request or invitation of any of its passengers in the presence of and without objection by the plaintiff, the law is for the defendant and the jury will so find."

For the reasons given the judgment of the trial court is reversed for proceedings consistent herewith.