11774.  GREENBERG & BOND CO. *v.* YARBROUGH.

1. Where a person hires his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the person to whom he is hired, although he remains the general servant of the person who hired him.

2. Where an undertaker is employed to conduct a funeral and to furnish automobiles in that service, and he hires from a taxicab company the automobiles, with chauffeurs furnished by the taxicab company, and the undertaker has the exclusive right to direct the mode and manner in which the chauffeurs shall perform the special service in connection with the funeral, and as to the funeral the chauffeurs are under the exclusive control of the undertaker, the chauffeurs become particular servants of the undertaker, and he is liable for their acts of negligence.

3. The instructions of the trial judge, as to the test by which the jury could determine who was the master at the time the act of negligence was performed by the servant, were correct, and the verdict for the plaintiff, if it was not demanded, was amply supported by the evidence.

DECIDED MARCH 26, 1921.

Action for damages; from Fulton superior court — Judge Hutcheson. July 1, 1920.

Application for certiorari was denied by the Supreme Court.

*J. L. Anderson, Westmoreland & Smith,* for plaintiff in error.

*Hewlett & Dennis,* contra.

HILL, J.  Greenberg & Bond Company was employed by two brothers to conduct the funeral of their mother, to furnish the coffin and robes and automobiles, and in general to see that the funeral was properly conducted.  Greenberg & Bond Company did not itself own automobiles, but was in the habit of hiring them, in connection with its business, from the Smith Taxicab Company and others.  There is some conflict in the evidence on the question as to whether the automobiles used in the funeral were engaged by Greenberg & Bond Company at the request and as the agent of the two brothers when they made the contract with the former for the funeral services;  Greenberg & Bond

Company insisting that these automobiles were hired by it as agent of the brothers, who had instructed it to do so, and this was all well known by them when the contract was made, as it had ordered the automobiles at their request and while they were in their offices arranging for the funeral. The two brothers, on the contrary, testified that they knew nothing whatever about the automobiles ordered by the Greenberg & Bond Company, or that it had hired them from other parties, and that they had no knowledge whatever on the subject and had never heard of the Smith Taxicab Company furnishing automobiles to Greenberg & Bond Company, until some time after the funeral. The plaintiff was a relative of the deceased mother and a sister of the two brothers who had made the contract for the funeral services, and she occupied one of the automobiles to the cemetery, and from the cemetery after the burial services were completed. While she was in the automobile, in company with several others, on the way back from the funeral, she was injured by the negligent driving of the chauffeur, who negligently ran into a telephone pole on the side of the road while he was exceeding the statutory speed limit. The verdict was for the plaintiff, and the case is before this court on exceptions to the overruling of the defendant's motion for a new trial. The controlling question is whether, under the evidence, the driver of the automobile was the servant of Greenberg & Bond Company at the time of the injury caused by his negligence, or whether he was the servant of the Smith Taxicab Company, who had furnished the automobile and the chauffeur to the undertakers for the funeral in question. The motion for a new trial contains several specific grounds, but in the view we take of the case they are not material, for the case turns upon the question above stated: who was the master of the chauffeur at the time of the injury? The trial judge submitted this question, under instructions, to be determined by the jury, and the question is raised by the plaintiff in error as to the soundness of these instructions, which will be considered later in this opinion.

It is well established that " the fact that an employee is the general servant of one employer does not, as matter of law, prevent him from becoming the particular servant of another, who may become liable for his acts. And it is true as a general

proposition that when one person lends his servant to another for a particular employment (or hires him), the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent (or hired), although he remains the general servant of the person who lent him (or hired him)." 18 R. C. L. 784. Wood, in his work on Master & Servant, § 317, quoted with approval by the Supreme Court in *Brown* v. *Smith & Kelly,* 86 *Ga.* 277 (12 S. E. 411, 22 Am. St. R. 456), says: "The real test by which to determine whether a person is acting as the servant of another is to ascertain whether at the time when the injury was inflicted he was subject to such person's orders and control, and was liable to be discharged by him for disobedience of orders or misconduct" Labatt, in his treatise on the subject of Master & Servant (2d ed.), § 52, says: "One person may be taken to have been the servant of another in respect of a given transaction, although he did not occupy that position for all purposes. In order to establish the relationship, it is merely necessary to show that he was a servant as regards the particular piece of work in which he was engaged at the time when he sustained or inflicted the injury complained of. . . The special master is alone liable to third persons for injuries caused by such wrongful acts as the special servant may commit in the course of his employment." And in Sherman & Redfield on Negligence, § 162, it is said: "If the hirer is vested for the time with the exclusive right to discharge the servants and employ others, he alone is responsible for their defaults." In the case of Byrne *v.* K. C., F. S. & M. R. Co., 61 Fed. 605 (9 C. C. A. 669, 24 L. R. A. 696), Judge Taft said: "The question is one of agency. The result is determined by the answer to the further questions, Whose work was the servant doing? and, Under whose control was he doing it?" In that case the railway company rented its engine to a bridge company for use in the performance of certain services, the bridge company paying the railway company $10 a day for its use and the expense of the fuel and supplies used in the running of the engine. In the conduct of the work done by the engine it was under the control of the superintendent of the bridge company. As this superintendent expressed it, "the bridge company rented the crew along with the engine from the

railway company. " The engine, while being thus operated, ran over and killed Nason, whose administrator, Byrne, brought suit against the railway company for damages. Judge Taft, speaking for the United States Circuit Court of Appeals, said: " On this state of facts we are clearly of the opinion that the court was right in holding that the railway company was not responsible for the acts of the engineer and fireman in running the engine which killed Nason. They were, it is true, general servants of the railway company, but at the time of the accident they were engaged in the work of the bridge company, were subject to the orders of the bridge company's officers, and in what they did or failed to do were acting for the bridge company. "

There are many other decisions in point. Indeed the trouble has not been as to the principle of law, which seems to be uniform, but the application of the principle to particular facts has given rise to a great number of conflicting decisions on the question under consideration. Judge Lurton quotes with approval the language of Chief Justice Cockburn in Rourke v. White Moss Colliery Co., 2 C. P. Div. 205, as follows: " When one person lends his servant to another for 'a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him " See Powell v. Va. Construction Co., 88 Tenn. 692 (13 S. W. 691, 17 Am. St. R. 921). The relation of master and servant exists only when the person whom it is sought to charge as master for the act of the servant either employed or controlled him, or had the right of control over him, at the time the injury sued for happened. To make the master responsible he must not only have the power to select the servant, but to direct the mode of executing the work and so to control him in his acts in the course of his employment as to prevent injury to others. He who has the choice, direction, and control of the servant is deemed to be the master, and whether or not the relation of master and servant exists, so as to render the rule of respondeat superior applicable, depends mainly on whether the employer retains the direction and control of the work or has given it to another person. *Brown* v. *Smith & Kelly,* supra.

Applying these principles to the facts in this case, was the

negligent chauffeur, at the time of his act of negligence which caused the injury to the plaintiff, the servant of Greenberg & Bond Company, or was he the servant of the Smith Taxicab Company? Unquestionably he was the general servant of the Smith Taxicab Company. Was he the special servant of Greenberg & Bond Company? It is insisted by counsel for the plaintiff in error that he was not the servant of Greenberg & Bond Company at the time of the injury, because all that Greenberg & Bond Company did by way of control of the chauffeur, in the performance of his duty as chauffeur, was to give him general directions to take certain persons to the funeral, and, after the funeral services at the cemetery, to take them back home or where they desired to go, and that this was not sufficient control and direction to raise the relation of master and servant at that time, and they invoke the well-known rule applied in what are known as the " carriage cases, " mention of which is made in 24 L. R. A., cited supra. In the decision rendered by Judge Taft he distinguished those cases from the case then under consideration. He said : " If a man lets out a carriage on hire to another, he in no sense places the coachman under the control of the hirer, except that the latter may indicate the destination to which he wishes to be driven. The coachman does not become the servant of the person he is driving, and, if the coachman acts wrongfully, the hirer can only complain to the owner of the carriage. If the hirer actively interferes with the driving, and an injury occurs to any one, the hirer may be liable, not as the master, but as the procurer and cause of the wrongful act complained of. In the present case the defendant parted for the time with control over the work of the man in charge of the crane, and their responsibility for his acts ceased for the time." Mr. Justice Field, in Little v. Hackett, 116 U. S. 366 (29 L. ed. 652), said, in connection with these carriage cases: " It is manifest, therefore, that they have no application whenever it appears that the master has parted to another for a time with control over his servant, to be used in the work of that other."

Now the question in the present case is: Did the Smith Taxicab Company surrender to Greenberg & Bond Company the direction and control of the chauffeur and the automobile while engaged in and during the conduct of the funeral? The ques-

tion is not whether Greenberg & Bond Company did exercise any other control than the giving of directions to go to the cemetery and to return therefrom, but whether it had the right, during the conduct of the funeral, to control the mode and manner in which the chauffeur was to exercise the duty for which he had been hired. Could it discharge him from that particular service for any misconduct on his part? After he had left the Smith Taxicab Company and gone into the service temporarily of Greenberg & Bond Company, what control as to that service did the Smith Taxicab Company have over him? It did have a general control as to all other services that he might render it as his general master. But after hiring this chauffeur and the car to the Greenberg & Bond Company, did the taxicab company have any further control over him? Could it have taken him back from the undertaker's until after the services had been completely performed? We think not. The test is as to who controlled his services as to the particular service that he was performing when his negligent act was committed. Did not Greenberg & Bond Company at that time have the exclusive control of his movements, not only giving him general directions, but ordering him how to go, and what to do; and if he in any wise misconducted himself in the performance of that service, could they not have discharged him therefrom? The contract for the funeral was made exclusively with the Greenberg & Bond Company by the two brothers of the deceased mother. The Greenberg & Bond Company agreed to furnish everything necessary to conduct the funeral as desired by its employers. These employers had no contractual relation whatever with the Smith Taxicab Company, and, according to their evidence, had no knowledge about the automobiles; and as to this the verdict must be accepted as the truth. But we do not deem it necessary to discuss this phase of the question further. It must be conceded that, under the facts of this case and in light of the decisions cited above, the negligent chauffeur was, at the time of the commission of his act of negligence, in the service of the Greenberg & Bond Company. The trial judge left this question to the determination of the jury, under instructions which, we think, presented the correct test as to when the relationship of master and servant arises. His instructions were as follows:

"If you should find that the defendant hired the automobile in question from the auto company, or any other person, who furnished a driver with the machine, and that the Smith Auto Company, or person from whom they hired it, did completely surrender to the defendant, Greenberg & Bond Company, the control of the driver, so that the Smith Auto · Company or other party hiring it could not exercise any control whatever over him, the driver in that case would be the servant of the defendant and the defendant would be responsible for the negligence of the driver, if you find there was any negligence. But, on the other hand, if you should find that the Smith Auto Company, or whoever hired the machine in question to the defendant, furnished with the machine the driver, but did not completely surrender to the defendant the control of the driver of the machine, except that it simply · gave to the defendant the right to direct where the machine was to be driven, then, in that event, the driver would be the servant of the Smith Auto Company, and the defendant would not be responsible for any negligence, if you find there was any negligence. " The evidence, applied to the issue above indicated, fully authorized the verdict against the undertaker; for as to the particular service, to wit, the employment by Greenberg & Bond Company of the chauffeur in charge of the car, the taxicab company had fully and completely surrendered, temporarily, all control of its servant to the undertaker.

Judgment affirmed. Stephens, J., concurs. Jenkins, P. J., disqualified.