Hart, J.
 

 The problem to be determined by this court is whether the trial court under the circumstances of this case as developed by the evidence erred in sustaining the motion of the defendants to direct a verdict at the close of plaintiff’s case. The plaintiff’s theory of the case is that when the accident occurred the automobile in which she was riding was constructively in the possession and under the control of the defendants who were using it to carry out a contract which they had made to transport the family of the decedent, including the plaintiff, to the church and cemetery and then back to the home; and that regardless of the relationship between the defendants and Sitgreaves, the owner, with reference to the automobile and its driver Holmes, the defendants are answerable for its operation while employed in the performance of that contract.
 

 
 *132
 
 On the other hand, the defendants claim that they were only hirers of the driver and car from Sitgreaves as a unit, did not exercise control except to indicate where the car was to be driven, and did not direct the route by which it should return to the home; that the relationship between them and Sitgreaves was that of independent contractor and that they cannot be held liable in this case on the doctrine of
 
 respondeat superior.
 
 They claim that the rule announced by this court in the case of
 
 Babbitt
 
 v.
 
 Say, Admr.,
 
 120 Ohio St., 177, 165 N. E., 721, is applicable to the facts in this case and must control its decision.
 

 While this court approves the holding in the case of
 
 Babbitt
 
 v.
 
 Say, Admr., supra,
 
 we think that it must be distinguished from the case at bar. It will be observed that this court in that case had under review a judgment as the result of a verdict of the jury against the defendant, an independent contractor, whose relationship to the plaintiff was quite different from that of the defendants to the plaintiff in this case, as will be pointed out in the course of this opinion.
 

 In the case at bar there was no general employment to do some work or act independently of the supervision and control of the defendants. The defendants had undertaken the entire supervision of this funeral to its minutest details. The car and driver which they hired from Sitgreaves was by them made an integral part of the funeral procession, an enterprise wholly directed and controlled by them. In view of the fact that they were providing transportation of the plaintiff and other relatives, they could not absolve themselves from entire responsibility for the competency and careful conduct of the driver under whose care they were placing the plaintiff for transportation. In fact they recognized some responsibility in this regard when they placed the sticker on the windshield of the car in question containing specific rules for the direction of the driver.
 

 
 *133
 
 Furthermore, the specific charge of negligence set out in plaintiff’s amended petition, and the evidence in support thereof, related to a reckless and unlawful speed and lack of control of the car on the part of the driver, that is, to the manner of operating the automobile rather than to its condition or serviceability, and as to this field the defendants rather than Sitgreaves were in direct charge and control. It is also suggested in plaintiff’s brief that the trial court took the position that the defendants’ claim could be supported by the fact that the injury to the plaintiff occurred on the return trip from the cemetery when Holmes, the driver of the car in which plaintiff was riding, was free to select his own route and was not, therefore, at that time subject to the control of the defendants, but we do not attach any merit to this claim. If an agency on the part of the driver to represent and act for the defendants in the transportation of the plaintiff arose, it must have continued until the transportation was completed.
 

 The weight of authority in this country seems to be to the effect that where an undertaker in conducting a funeral furnishes a conveyance and driver for the transportation of members of the family to the funeral and return therefrom he is liable in damages for injury to a member of the family so transported resulting from the negligent operation of the conveyance by the driver, even though the conveyance and its driver are hired by the undertaker for such purpose from a third party who as owner thereof maintains the conveyance, provides the driver, and pays him his wages.
 
 John H. Radel Co.
 
 v.
 
 Borches,
 
 147 Ky., 506, 145 S. W., 155;
 
 Mahany
 
 v.
 
 Kansas City Rys. Co.
 
 (Mo. Sup. second appeal), 254 S. W., 16, 29 A. L. R., 817;
 
 Pennsylvania Co.
 
 v.
 
 Roy,
 
 102 U. S., 451, 26 L. Ed., 141;
 
 Dippel
 
 v.
 
 Juliano,
 
 152 Md., 694, 137 A., 514;
 
 Grothmann
 
 v.
 
 Herman
 
 (Mo. App.), 241 S. W., 461;
 
 Greenberg &
 
 
 *134
 

 Bond Co.
 
 v.
 
 Yarbrough,
 
 26 Ga. App., 544, 106 S. E., 624.
 

 As was said in the case of
 
 Greenberg & Bond Co.
 
 v.
 
 Yarbrough, supra,
 
 the question is not whether the undertaker did exercise any control other than the giving of directions to. go to the cemetery and to return therefrom, but whether he had the right, during the conduct of the funeral, to control the mode and manner in which the chauffeur was to exercise the duty for which he had been hired. Could it discharge him from that particular service for any misconduct on his part? Could the owner have taken him back from the undertaker until after the service had been completely performed? The test is as to who controlled his services as to the particular service that he was performing when his negligent act was committed.
 

 If Sitgreaves, the owner, parted with power of control over his driver Holmes, and the defendants assumed to make and did make such use of him in connection with the conduct of this funeral as they deemed proper, Holmes by reason of such service may have become the special servant of the defendants for whose acts they would be responsible under the doctrine of
 
 respondeat superior.
 
 And while ordinarily under undisputed facts the question as to whether the relation of master and servant or that of independent contractor arises by reason of such facts, the trial court should say to the jury which relation exists
 
 (Schickling, an Infant,
 
 v.
 
 Post Publishing Co.,
 
 115 Ohio St., 589, 155 N. E., 143), yet where the circumstances disclosed by the uncontradicted evidence, as in this case, are such that reasonable minds might reach different conclusions as to inferences to be drawn therefrom and the ultimate facts established thereby
 
 (Pence
 
 v.
 
 Kettering,
 
 128 Ohio St., 52, 190 N. E., 216;
 
 Dippel
 
 v.
 
 Juliano,
 
 152 Md., 694, 137 A., 514), there arises a question of fact for the jury, and this court
 
 *135
 
 thinks the trial court erred in not submitting to the jury under proper instructions the question of the relationship of this driver to the defendants and their responsibility for his acts.
 

 There is another important respect in which this case differs from that of
 
 Babbitt
 
 v.
 
 Say, Admr., supra.
 
 In that case there was considered the common law liability of the owner of a truck to a pedestrian who was. injured in the street through the operation of the truck by the servant of the owner. In many tort actions the duty which the defendant owes to the plaintiff is measured and fixed by the terms of a contract or contracts; and while the action in this case sounds in tort, the measure of the duty of the defendants to the plaintiff is fixed by their contract to furnish reasonably safe transportation to the plaintiff and other friends of the family to the funeral service and back to the home of the family. It is elemental that one who undertakes by contract to perform a definite and particular service for another cannot relieve himself from a faulty performance or a failure to perform, by showing that he has engaged another to perform in his place, and that the fault or failure is that of such other or an independent contractor and not that of himself. He may in the performance of his contract, use his own servants, tools and appliances, or he may hire servants, tools or appliances from another for that purpose; but in either case, without regard to his relationship to workmen or appliances, he is personally responsible to his obligee for the fulfillment of his own contract.
 
 John H. Radel Co.
 
 v.
 
 Borches, supra; Mahoney
 
 v.
 
 Kansas City Rys. Co., supra; Pennsylvania Co.
 
 v.
 
 Roy, supra.
 

 The facts in the case of
 
 John H. Radel Co.
 
 v.
 
 Borches, supra,
 
 are so similar to the facts in the case at bar and the comments of the court are so apropos to the facts in this case that we quote from the opinion in that case, as follows:
 

 
 *136
 
 “We think it clear that in arranging for the transportation of the decedent’s relatives and family the undertaking company owes the same contract obligation to each of them, though it may not know, save in the most general way, the number and names of those who are to be transported. It is a matter of common '•knowledge that in the distressing surroundings of this nature, some one of the family, or some friend of the family, acts for all; and it is right that the obligations, whatever they may be, assumed or owed by the undertaker, should be held as contract obligations owed to all. * * * But the divergence of position comes in that the plaintiff insists that since the carriages were ordered of the undertaking concern and supplied by it, it, in effect, was the liveryman, and is answerable to the plaintiff not otherwise than as if the carriages had been its own; while the defendant’s position is that the carriage was furnished by an independent contractor, the Livery Company, and that defendant is not responsible for any negligence of the independent concern’s servants or agents.
 

 “The error in the Radel Company’s conception of its case lies in its misunderstanding of the facts. Under the evidence, it undertook to supply the carriages. There is no evidence that in supplying them it was only to act as agent in procuring them, or that they were to be supplied by another or independent contractor or that it was so understood by those to whom the carriages were to be supplied. Nor was the injury suffered by any third person, as against whom the fact of the independent service could be shown. * * * It would be different, of course, if it were shown that the substituted performance, the engaging of another to perform, was with the knowledge and acquiescence of the one with whom he undertook his contract obligation. If it were shown here, to illustrate, that either the plaintiff, or the member of the family who engaged the carriages, knew that the Radel
 
 *137
 
 Company would not supply the carriages, or understood or assented that they were to be supplied by another, then the plaintiff’s claim would be against that other — unless it should be shown by the evidence, as it was not, that the complete direction, authority and control of the carriage and its driver were surrendered for the time being to the Eadel Company.
 

 “The state of fact just supposed; i. e., that it was understood in the contract with the Eadel Company that the carriages were in fact to be supplied by another under a hiring by it, would bring the case within the rule argued by appellant, that in an ordinary hiring from a livery company the hirer who exercises no control over the driver further than the right to generally direct where to go, is not the master so as to render him liable in damages to a third person for injuries received through the negligence of the driver of the vehicle. The appellant’s trouble in this respect, as above pointed out, lies in that the plaintiff was not a ‘third person’; per contra, she was a party to the contract made with the Eadel Company whereunder in so far as the evidence upon the trial disclosed, that company itself was to furnish the carriages.”
 

 The law as applicable to the case at bar is very clearly summed up in 2 Eestatement of the Law of Torts, 1150, Section 429, as follows:
 

 “One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for bodily harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.”
 
 Comment b.
 
 under this section of the restatement as to the extent of the rule says: “The rule stated in this Section subjects the
 
 *138
 
 employer of the contractor to liability irrespective of whether the negligence of the contractor consists in supplying defective appliances by which the services are to be rendered or in carelessness in the detail of rendering them. Thus, if an undertaker who has contracted to conduct a funeral, instead of supplying his own cars, contracts with an automobile company to supply transportation for the family and mourners, the undertaker is liable to either a member of the family or a mourner, who is injured by the defective condition of the car supplied by the automobile company or by the careless driving of one of its chauffeurs.”
 

 We think the doctrine of the case of
 
 Frerker
 
 v.
 
 Nicholson,
 
 41 Colo., 12, 92 P., 224, 13 L. R. A. (N. S.), 1122, 14 Ann. Cas., 730, cited in defendants’ brief, is unsound as applied to the facts in the case at bar, in that, it treats the occupant of the carriage as a third person, and not as one having a contractual right to require reasonably safe transportation from one who has assumed the whole obligation to supply the carriage.
 

 The case of
 
 Boniface
 
 v.
 
 Relyea,
 
 36 How. Pr. Rep. (N. Y.), 457, cited by the defendants, is in point except that it is not clear from the report that the undertaker himself contracted to furnish the carriages. It appears that he was to have entire charge of the funeral and was to secure the carriages and have them present. The court does not discuss the matter of contract relationship and is unfortunate in its illustration about hiring a hackney coach from a public stand whose driver negligently injured another, in which event the hirer and not the passenger who assumed no control, would be responsible, a situation in no sense comparable to the one before the court in that case nor to the case at bar.
 

 We think the question as to whether the defendants performed their contract with the plaintiff for rea
 
 *139
 
 sonably safe transportation also constitutes a question of fact which, should have been submitted to the jury.
 

 Judgment reversed and cause remanded.
 

 Weygandt, C. J., Carver, Stephenson, Jones and Matthias, JJ., concur.
 

 Williams, J., not participating.