Weygandt, C. J.,
 

 dissenting. The sole complaint upon which this court is asked to reverse this judgment is that the trial court was in error in refusing to direct a verdict in favor of the defendant. Motions therefor were duly interposed and overruled at the-close of the plain tiff’s evidence and again at the conclusion of all of the evidence.
 

 A study of the record in this case discloses that on August 26,1939, when he was injured, the plaintiff was an employee of the Central Painting Company which-had been engaged by the defendant to do certain cleaning and painting in and about one of its buildings in which it had an electric crane. Likewise, there was then-under construction in the same building a so-called con-' crete pickling vat, which work was being done for the defendant by still another concern called the John L. Joyce Company. On the above-mentioned date the
 
 *155
 
 Joyce Company in the course of its work found it necessary to move certain loose earth that had been placed in large buckets. These were of such weight that a crane was needed to lift them. Although the defendant’s building was equipped with an overhead crane, the defendant, the Wilkoff Company, was not using it at that moment. In order to obtain the assistance of one of the defendant’s experienced crane operators to lift the buckets and thereby expedite the work, a foreman of the Joyce Company took the precaution to go outside the building and talk to a man who appeared to be in charge of some of the defendant’s regular employees then temporarily engaged in digging ditches nearby. After the request was made one of the defendant’s employees named Joe Ferarra came into the building and started to operate the crane. At that instant the plaintiff as an employee of the painting company was astride the elevated crane track where he was doing the .work of cleaning and painting. When he first observed that the crane was moving it was within four or five feet of him. He tried to escape but found himself trapped, and one of the wheels mutilated his right hand before his outcries attracted the attention of the operator who then stopped the crane.
 

 The defendant’s contention is that the record discloses no evidence from which reasonable minds could draw the conclusion that Joe Ferarra was acting within the scope of his employment when he operated the defendant’s crane and injured the plaintiff. Restated more specifically, the defendant urges that the record contains no “evidence showing that an 'official with authority in the employee of the Wilkoff Company loaned the crane operator to the foreman of the Joyce Construction Company; but if such were the fact * * the Wilkoff Company” would be absolved “from any liability, because at the time the plaintiff was injured,
 
 *156
 
 tlie Wilkoff employee was doing the work of the Joyce Company.”
 

 The first part of this contention of the defendant is answered both in the evidence offered by the plaintiff and in that adduced by the defendant. One of the plaintiff’s witnesses testified in part as follows:
 

 “Q. So then, Mike, did you know the craneman? 'A. If I see.
 

 “Q. How did you know him, how did you know he was a Wilkoff man? A. I seen him just two days.
 

 “Q. Had he operated the crane before? A. Yes, the man who runs the crane.
 

 “Q. In that building? A. Yes.
 

 “Q. You knew He was a Wilkoff Company man? A. I see that two times, the first day I move the paint, the second day go and ask for crane. * * *
 

 “Q. And you knew this was a Wilkoff Company man, the other men you didn’t know? A. Master mechanic going to see the fellow run the crane. The'master mechanic sent him in. ”
 

 One of the defendant’s witnesses was Gregory Raima, the foreman of the Joyce Company, who testified in part as follows:
 

 “Q. What did you do? A. Well, I looked around there for somebody I figured was in charge and I went outside; there was men working outside putting a sewer in or something. I found a man looked like he was in charge and I asked if he could get a crane down there and he said he would, and I came back inside and went to work. * * *
 

 “Q. What did you do in order to get this crane, who did you go to see? A. I went to see a man who looked to me to be in charge of putting the pipe line in, whatever they are doing outside.
 

 “Q. To a Wilkoff man were you looking for in order to get permission to use the crane? A. Yes, T was looking for sort of a boss of the Wilkoff firm and this man looked to me as though he was.
 

 
 *157
 
 ££Q. And you went there for the purpose of asking a foreman or someone in charge of the plant of the Wilkoff Company in order to get a crane operator to work, I mean to do something for you, is that right? A. Yes.
 

 ££Q. And you went to him and talked to him and asked him for a crane operator? A. I asked him if I could get the crane down to make a lift.
 

 ££Q. What did he do? A. He said he would so I walked away.
 

 ££Q. Did he go immediately or send a man? A. I don’t remember whether he sent a man or went himself,. I just told him and then I left.
 

 ££Q. What? A. I went up to him like I would go up to you and tell you what I wanted'and walk away, you said you would and I walked away.
 

 ££Q. Then what did you do ? A. I went back inside about my own work.
 

 ££Q. There was a crane operator sent to you? A. No, nobody was sent to me.
 

 ££Q. Well, how did you know it was a crane operator after you had this conversation with him that came over and offered his services? A. You could hear the crane coming down the line.
 

 ££Q. And after that conversation with the supervisor on that job of the Wilkoff Company the next thing you saw was the crane coming down? A. Yes.
 

 ££Q. You didn’t offer to pay this crane opei-ator anything for his services for use of the crane? A. No, I wouldn’t have any authoihty to do that.
 

 ££Q. And that crane operator was an employee of the Wilkoff Company? A. I couldn’t say, I don’t know even who ran the crane.
 

 ££Q. You talked to a supervisor or a superintendent or sombody in authority there at the Wilkoff Company? A. He seemed to me to be, I don’t know the name.
 

 
 *158
 
 “Q. But he seemed to be someone who had authority around that plant, is that right? A. That is right.”
 

 In view of this testimony this court manifestly should be slow indeed to hold that the record discloses no evidence from which the jury reasonably could conclude that the crane operator was loaned or sent by someone with actual or apparent authority for the defendant company.
 

 The next part of the defendant’s contention is that, even if there is evidence that its crane operator was loaned or sent by someone in authority, the operator was doing the work of the Joyce Company, thereby relieving the defendant from liability. However, this view disregards the testimony of Mr. Ramm that the selection of the operator, Ferarra, was made by the defendant’s foreman alone. As above quoted, Mr. Ramm testified that he made .the request and then returned to his work without waiting to learn what man was sent. One of the defendant’s witnesses testified that the company had two crane operators on its payroll. Ferarra was one of them; and he testified that he had been
 
 “a
 
 craneman for approximately three years.” Then he began working as a gauger but occasionally was assigned to operate the crane again. One of the defendant’s timekeepers testified as follows:
 

 “Q. Mr. Glassburg, just one question, on this particular day, August 26, will you tell us from your records who among the 18 men working were competent to operate the crane?
 

 “Mr. Glaros: He said there were two cranemen working. A. Joseph Ferarra, Stanley Moresko.”
 

 According to this evidence Ferarra was selected and loaned or sent by the defendant for a temporary, limited purpose, and the right of control and retention remained in the defendant from whom he received his only wages. The application of the doctrine of
 
 *159
 

 respondeat superior
 
 depends upon the power of control which the superior possesses and which for the protection of third persons he is required to exercise over the conduct and activities of his subordinates. Consequently, the doctrine has application only in cases where the power of control exists, and such power does not exist where the special employer has no voice in the selection or retention of the negligent subordinate.
 
 Billig, a Minor,
 
 v.
 
 Southern Pacific Co.,
 
 189 Cal., 477, 209 P., 241;
 
 Standard Oil Co.
 
 v.
 
 Anderson,
 
 212 U. S. 215, 53 L. Ed., 480, 29 S. Ct., 252;
 
 Hooper
 
 v.
 
 Brawner,
 
 148 Md., 417, 129 A., 672, 42 A. L. R., 1437; 26 Ohio Jurisprudence 625, Section 602;
 
 Babbitt
 
 v.
 
 Say, Admr.,
 
 120 Ohio St., 177, 165 N. E., 721;
 
 Sack v. A. A. Nunn & Son,
 
 129 Ohio St., 128, 194 N. E., 1. The following summary of the rule appears in 35 American Jurisprudence, 971, Section 541:
 

 “A
 
 master cannot avoid liability for the negligent act of his servant by merely showing that at the time of the injury, he had loaned the servant to another; but he must also show that when he loaned him, he surrendered to the borrower the right to control and direct him. To escape liability, the original master must have resigned full control of the servant for the time being; it is not sufficient that the servant was partially under the control of another.”
 

 Hence, the single fact that the defendant’s crane operator was momentarily performing certain work for the Joyce Company does not absolve the defendant company from liability for his negligent acts.
 

 It is of course not the duty of this court to weigh the conflicting evidence and determine the credibility of the various witnesses. This review is limited to a determination whether the record discloses favorable evidence from which reasonable minds can draw the factual conclusion that the defendant’s paid employee was acting within the scope of his employment when
 
 *160
 
 he operated the defendant’s overhead crane and injured the plaintiff who was properly at work on tire defendant’s premises.
 

 It is respectfully submitted that the trial court was not in error in refusing to direct a verdict for the defendant under these- circumstances, and the judgment should be affirmed.