Weygandt, C. J.
 

 The single assignment of error here urged by Pence is that the trial court should not have directed a verdict.
 

 This case presents an anomalous situation in that the employer claims the employee was in the course of his employment, while the employee himself asserts he was not.
 

 Was transportation a part of the employment contract between Pence and Kettering?
 

 Both counsel insist that there is little direct conflict in the evidence; however, each strenuously contends that the only reasonable inferences to be drawn therefrom are such as to require a directed verdict in favor of his client.
 

 The following excerpts from the testimony of Pence and Kettering adequately demonstrate the state of the evidence:
 

 “Q. Was anything said about how you were to get
 
 *54
 
 home, did you talk to Frank or he talk to you? A. No, he knowed I was to get home. * * *
 

 “Q. "When you left the son’s, do you recall of saying anything to him about taking you home? A. I don’t remember.
 

 “Q. He got in the truck and you got in? A. Yes, sir.
 
 * * *
 

 “Q. When you. went to work for Mr. Kettering you made an arrangement whereby you were to work for a dollar a day and board? A. No, I got $2 a day and board.
 

 “ Q. You started at $2 and then as the harvest passed over and you went into the fall, you and Mr. Kettering made a new arrangement? A. No, he said he could get hands for less money and I told him I would work as cheap as anybody.
 

 “Q. That was a new scale of pay? A. New scale.
 

 “Q. That was a dollar a day and meals? A. Yes, sir.
 

 “Q. You would report to Mr. Kettering’s home in the morning, as a rule, and he would tell you where you were to work that day? A. Yes, sir.
 

 “Q. When Saturday night came you looked to Mr. Kettering for your money? A. Yes, sir.
 

 “Q. Along in the fall and up to the time of the accident, I will ask if you and Mr. Kettering were working together any place except Mr. Kettering’s farm; you would
 
 go to
 
 Mr. Kettering’s and get into his conveyance and get to that point, isn’t that correct? A. Yes, sir.
 

 “Q. When you would complete that labor and had your evening meal he would bring you back home? A. Once in a while he took me home. He took me to Polk.
 

 “Q. You just live a little north of Polk? A. Yes, sir.
 

 “Q. In other words, he got you back to the neighborhood? A. Yes, sir.
 

 “Q. That had been going on for two or three months prior to the accident? A. Yes, sir. * * *
 

 
 *55
 
 “Q. Something was said about when you worked around the neighborhood, did you come home with Mr. Kettering, or did you walk home; was there any set regular way you did it? A. No, nothing said. Part of the time I furnished my own way. Part of the time I went with him.
 

 “Q. Just as that happened? A. Yes, sir. * * *
 

 “Q. But what was said between you and Mr. Pence? A. He was to work for a dollar a day.
 

 “Q. Anything else? A. He was to have his dinner and supper, I think that was all. * * *
 

 “Q. Did Mr. Pence have any other way of getting home that evening except with you? A. Not unless he went afoot.
 

 “Q. He didn’t have any automobile at that time, did he? A. He had none that he could use.”
 

 While there may be little direct conflict in this evidence, can it be said as a matter of law that reasonable minds might not reach different conclusions as to the inferences to be drawn therefrom?
 

 Kettering insists that it was a part of his duty to take Pence home, and that therefore the day’s employment had not terminated. But what did Kettering mean when he said that Pence was to work for a dollar a day, dinner and supper, and that was all? What is the import of Pence’s statement that part of the time he furnished his own way and part of the time he went with Kettering?
 

 Without further comment it is sufficient to say that in the opinion of this court the evidence is such as to clearly present a question of ultimate fact for determination by a jury.
 
 Vignola
 
 v.
 
 New York Central Rd. Co.,
 
 102 Ohio St., 194, 131 N. E., 357.
 

 It therefore follows that the judgments of the Court
 
 *56
 
 of Common Pleas and the Court of Appeals must be reversed and the cause remanded for retrial.
 

 Judgment reversed.
 

 Allen, Stephenson, Jones, Matthias, Bevis and Zimmerman, JJ., concur.