Bell, J.
 

 In the statement of facts Dorothy Bennett has been designated as plaintiff, Sinclair Refining-Company as Sinclair, and Doyle Varnes as Varnes and such designations will "be followed in this opinion.
 

 The principal assignments of error may be.stated thus :
 

 1. That the court was without jurisdiction of the persons of the defendants.
 

 2. That plaintiff failed to allege, state or prove defendants were engaged in a joint adventure; therefore the Court of Common Pleas of Summit county was without jurisdiction to entertain the action.
 

 3. That the trial court erred in refusing to direct a verdict in favor of’ the. defendants at the conclusion of plaintiff’s evidence and at the conclusion, of all the evidence.
 

 4. That the court erred in its charge to the .jury.
 

 5. That the court erred in overruling the 'motions for judgment notwithstanding the verdict.
 

 The first assignment of error is based upon the proposition that the defendant Varnes was a resident of Wayne county, Ohio, and defendant Sinclair was a foreign corporation; therefore, defendants not being engaged in a joint adventure, the Court of Common
 
 *144
 
 Pleas of Summit county did not acquire jurisdiction of their persons.
 

 Attention will first be directed to defendant Varnes.
 

 The accident having occurred in Wayne county and Varnes being a resident thereof, any action in which he was the sole defendant could be maintained only in the courts of that county. (Section 11277, General Code.)
 

 Sinclair, being a foreign corporation, could be sued in the instant tort action in any county in the state of Ohio in which it owned property or had debts owing to it, or where such defendant was found, or where the cause of action, or some part thereof, arose. (Section 11276, General Code.)
 

 The answer of Sinclair specifically admits - that it owned property and credits in Summit county; therefore the action was properly maintainable against the defendant Sinclair in Summit county, Ohio.
 

 Section 11282, General Code, provides in part as follows:
 

 “When the action is rightly, brought in any county, according to the provisions of the next preceding chapter [Sections 11268 to 11278, General Code], a summons may be issued to any other county, against one or more of the defendants, at the plaintiff’s request * * # ?>
 

 By virtue of the provisions of this section, the action having been brought against Sinclair according to the provisions of Section 11276, General Code, summons was properly issued to Wayne county against defendant Varnes.
 

 If defendant Varnes was joined properly with Sinclair then he was rightly brought into Summit county; on the other hand, if Varnes and Sinclair were joined improperly then there existed no right to compel Varnés to submit to the jurisdiction of the courts of Summit county
 
 (Stark County Agricultural Society
 
 v.
 
 Brenner, an Infant,
 
 122 Ohio St., 560, 172 N. E., 659).
 
 *145
 
 Whether he was joined properly with Sinclair was dependent upon an issue of fact, to wit, whether Sinclair and Yarnes were engaged in a joint adventure at the time of the injury. That issue not being determinable in advance of the trial, the court did not err in overruling the motions of defendants attacking the jurisdiction of the court, made prior to trial.
 

 Before proceeding to consider assignments of error Nos. 2, 3 and 5, which will be disposed of together, we shall direct our attention to assignment No. 4, “That the court erred in its charge to the jury.”
 

 This assignment of error makes complaint of the charge in four particulars: (A) That the court failed to charge that the accident occurred on a state route or main thoroughfare in or. outside of the business or closely built up portion of a municipal corporation; (B) that the court quoted that portion of Section 12603, General Code, pertaining to the assured clear distance ahead; (C) that the court charged that a vehicle meeting another approaching from the opposite direction shall pass to the right; and (D) that the court failed to define the term “proximate cause.” Complaints A and D are grounded upon omissions to charge.
 

 The record discloses that at the conclusion of the charge to the jury the court said:
 

 “Does counsel for the plaintiff think of any subject the court should touch upon that I have failed to speak on, or any errors the court has made?
 

 “Mr. Guinther: No.
 

 “The Court:. Counsel for the defense? * * *
 

 “Any suggestions or corrections by the defendants?
 

 “Mr. Kelly:' Nothing.
 

 “Mr. Bierce: Nothing.”
 

 It is well established in this state that a judgment will not be reversed for an omission to charge upon a particular subject matter, where, as here, counsel have been granted full opportunity to call such omission to the attention of the court.
 

 
 *146
 
 Complaint B is that the court quoted that portion of Section 12603, General Code, pertaining to the assured clear distance ahead. As to this claim the record discloses that in the charge the court used the following language:
 

 “It is the law of Ohio that no person shall operate a motor vehicle in and upon the public roads and highways at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface and width of the road or highway and of any other conditions then existing, and no persón shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured, clear distance ahead. It shall be
 
 prima facie
 
 lawful for an operator of a motor vehicle to drive the same at a speed not exceeding twenty miles per hour when passing a school building, or the grounds during school recess and while children are going to or leaving school during the opening or closing hours.
 

 “Twenty miles per hour in business or closely built ■ up portions of municipal corporations.
 

 “Twenty-five miles per hour in all other portions of a municipal corporation except on state routes or on main thoroughfares.
 

 “Thirty-five miles per hour on state routes or main thoroughfares within municipalities outside business portions.
 

 “Forty-five miles per hour on highways outside of municipal corporations.
 

 “It shall be
 
 prima facie
 
 unlawful for any person to exceed any of the foregoing speed limitations.”
 

 It is obvious that the court was reading to the jury from Section 12603, General Code. Nothing further was said as to the assured clear distance ahead.
 

 One of the assignments of negligence is that the tank truck was being operated at a speed greater than was
 
 *147
 
 reasonable and proper, having dne regard for the conditions then prevailing. That allegation was denied in the answer of defendant Varnes. Section 12603, General Code, was applicable to that issue and the fact that the court read the assured clear distance-ahead provision of the statute, although inapplicable, cannot be deemed to be prejudicial.
 

 Complaint C is that the court in charging the jury as to passing vehicles going in opposite directions said “ ‘a vehicle meeting another vehicle approaching from the opposite direction, shall pass to the right’ ” and that the failure “ Go pass to the right of the vehicle that is approaching your vehicle is negligence in and of itself.’ ”
 

 We think this part of the charge was both proper and appropriate. Section 6310-18, General Code (110 Ohio Laws, 136), now Section 6307-26, read as follows: “A vehicle meeting another vehicle approaching from the opposite direction shall pass to the right.” By this statute the duty of the driver of a motor vehicle to keep to the right is made a specific requirement and a violation thereof is negligence as a matter of law.
 
 (Mahoning Savings & Trust Co., Exr.,
 
 v.
 
 Kellner, Admx.,
 
 131 Ohio St., 69, 1 N. E. [2d], 616.) This court has held frequently that where one is charged with the violation of such a statute and seeks to avoid the legal effect thereof, the burden is upon the person .so charged to show such a state of facts, over which he had no control, as to make compliance therewith impossible.
 
 Glasco
 
 v.
 
 Mendelman,
 
 143 Ohio. St., 649.
 

 We conclude that no prejudicial error was committed in the charge to the jury.
 

 Assignments Nos. 2, 3 and 5 all revolve around the controlling issue in this case-: Whether the defendants were engaged in a joint adventure. If there was no joint adventure then under the pleadings and evidence the court acquired no jurisdiction over the person of
 
 *148
 
 Varnes, and Sinclair was deprived of its right to remove the cause to the federal court, which right it could have exercised except for the fact that Varnes was joined as a defendant. .
 

 In the statement of facts we have set forth in some detail the evidence upon the question of joint adventure.
 

 The only reasonable conclusion from a reading of this record is that joint adventure was the controlling and in reality the only contested issue in the case. The defendants offered no evidence upon any other subject.
 

 This judgment can be sustained only upon that theory. If Varnes was an agent or servant of. Sinclair or an independent contractor then this judgment must ■be reversed.
 

 The appellants (Sinclair and Varnes) vigorously assert that there was no joint adventure; that the court should have so declared as a matter of law; and that in •submitting that issue to the jury the court committed prejudicial error.
 

 If under the pleadings and the evidence it was the duty of the court to declare the relationship of the parties, as a matter of law, then the submission of that question to the jury was prejudicial error, or if upon the evidence adduced reasonable minds could come to no conclusion other than that the defendants were not engaged in a joint, adventure, then it was the duty of the court to instruct a verdict in favor of defendants or in the event of a verdict for the plaintiff to render judgment notwithstanding the verdict.
 

 These propositions will be considered in the order stated.
 

 (1) Under the pleadings and the evidence adduced _was.it the duty of the court to declare the relationship .of the defendants, as a matter of law?
 

 The Ohio rule, as deduced from the decided cases, would seem to be that where the ultimate fact is undis
 
 *149
 
 puted, ordinarily a question of law is presented for determination by the court, but where the ultimate fact must be determined from inferences to be drawn from other facts and where reasonable minds may reach different conclusions from such inferences, then it is proper to submit the determination of the ultimate fact to the jury.
 

 In
 
 Sack
 
 v.
 
 A. R. Nunn & Son,
 
 129 Ohio St., 128, 194 N. E., 1, this court said:
 

 “And while ordinarily under undisputed 'facts the question as to whether the relation of master and servant or that of independent contractor arises by reason of such facts, the trial court should say to the jury which relation exists
 
 (Schickling, an Infant,
 
 v.
 
 Post Publishing Co.,
 
 115 Ohio St., 589, 155 N. E., 143), yet where the circumstances disclosed by the uncontradicted evidence, as in this case, are such that reasonable minds might reach different conclusions as to inferences to be drawn therefrom and the ultimate facts established thereby
 
 (Pence
 
 v.
 
 Kettering,
 
 128 Ohio St., 52, 190 N. E., 216;
 
 Dippel
 
 v.
 
 Juliano,
 
 152 Md., 694, 137 A., 514) there arises a question of fact for the jury, and this court thinks the trial court erred in not submitting- to the jury under proper instructions the question of the relationship of this driver to the defendants and their responsibility for his acts.”
 

 See, also,
 
 Leonard
 
 v.
 
 Kreider, a Minor,
 
 128 Ohio St., 267, 190 N. E., 634;
 
 Keesecker
 
 v.
 
 G. M. McKelvey Co.,
 
 141 Ohio St., 162, 47 N. E. (2d), 211;
 
 Schickling, an Infant,
 
 v.
 
 Post Publishing Co., supra;
 
 and
 
 Pence
 
 v.
 
 Kettering, supra.
 

 We can see no legitimate reason why the rule announced in those cases should not be applied to this case.
 

 Without again reviewing- the evidence in any great detail, the record discloses that the defendant Sinclair relied principally upon its contact with Zimmerman.
 

 
 *150
 
 Had there been no deviation from the terms of the contract it would have been the duty of Zimmerman to furnish the tanks for the delivery of the Sinclair products from the bulk station to the customers. This provision of the contract, however, was abrogated by Sinclair’s furnishing the tank to Varnes for such deliveries as were made by him. Sinclair also furnished signs and emblems to place upon the tank and permitted whoever was in charge of the truck to make its collections and sign its receipts.
 

 From this brief review of the evidence it seems quite clear that the ultimate fact-as to whether the defendants were engaged in a joint adventure could be determined only from the reasonable inferences to be drawn from the undisputed evidence, including the written contract between Sinclair and Zimmerman.
 

 . "We think that reasonable minds might well have reached different conclusions as to the inferences to be drawn from the undisputed evidence and that a proper jury question was presented.
 

 (2) The final question is whether there was any evidence of joint adventure and if so was the evidence of such a substantial nature that reasonable minds might reach different conclusions upon that question.
 

 In the solution of this problem, naturally the first question is: What is a joint adventure? Many definitions of that term may be found in the adjudicated cases and .text books. The appellants concede that no substantial fault can be found with the following definition found in 23 Ohio Jurisprudence, 330, Section 2:
 

 “A joint adventure has been defined to be a special combination of persons undertaking jointly some specific adventure for profit, without any actual partnership or corporate designation; an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. * * #
 

 
 *151
 
 “The relation of joint adventurers obviously is created where two or more persons combine their money, property, or time in the conduct of some particular line of trade, or for some particular business deal, agreeing to share jointly, or in proportion to capital contributed, in the profits and losses, assuming that the circumstances do not establish a technical partnership.”
 

 See, also, 48 A. L. R., 1055; 63 A. L. R., 909; and 138 A. L. R., 968, and cases there cited.
 

 A joint adventure, although not identical, is closely' akin to a partnership, and both relationships are governed by the same rules of law. A contract of joint adventure need not be established by showing an express agreement between the parties, but it may be implied or inferred, in whole or in part, from their acts and conduct. See 138 A. L. R., 968, and cases cited.
 

 Where the existence of the relationship of joint adventures is an issue and there is substantial evidence tending to prove that the parties intended to join their efforts in furtherance of some enterprise for their joint profit, the question is one of fact for the determination of the jury.
 

 Here the uncontradicted evidence discloses that Sinclair and Yarnes did combine their property. Sinclair owned the tank and Varnes the truck. Both were engaged in the single enterprise of distributing Sinclair’s petroleum products. The signs upon the tank indicated to the public that Sinclair was interested in the distribution enterprise. Each was interested in making a profit. The customers were Yarnes’ and he could sell to them without limitation. On each gallon sold by him he made a profit of one and one-fourth cents, and, while the record does not disclose the exact profit to Sinclair, the jury might well have presumed that Sinclair was interested in and did make a profit. The same is true as to oils and greases.'
 

 
 *152
 
 As to losses the situation, as shown by the record, was that if credit was extended by Sinclair to any of Varnes’ customers the range of credit was fixed by Sinclair and losses within that range were absorbed by it; if, however, Varnes extended credit to such a customer beyond such credit range or if Varnes extended credit to a-customer without approval from Sinclair, and loss resulted, Varnes absorbed such loss.
 

 We think that from the evidence reasonable minds might well have concluded that Sinclair and Varnes did combine their property, money and time in the conduct of distributing petroleum products; that each participated in the profits and losses; and that there was no actual partnership or corporate designation.
 

 The jury having concluded that the appellants were engaged in a joint adventure, we are not prepared to say that such conclusion is contrary to law.
 

 The doctrine of joint adventure is one of comparatively recent origin in the law and the many reported cases throw light upon the extent to which this modern doctrine has been developed. We are concerned here only with what is the proper rule to be applied in a case where a third person brings an action against two or more persons or corporations, as joint adventurers, basing the cause of action upon the negligent act of one of them.
 

 The case of
 
 Martin
 
 v.
 
 Weaver
 
 (Tex. Civ. App.), 161 S. W. (2d), 812, presented this situation: The plaintiff’s wife had been injured while riding as a passenger in a taxicab. Martin owned the cab and had turned it over to one Cruger to drive. Cruger and Martin divided the earnings from the cab. The suit was against Martin and 94 Transportation, Inc., and charged that they were “engaged as joint adventurers in the common enterprise.” The company insisted-that it had nothing to do with the driving of the taxicabs. It leased small pieces of land in the city of El Paso and
 
 *153
 
 maintained telephones on them. It permitted Martin and other owners of taxicabs to stand their cars on the lots. When a telephone call came the first car in line responded to the call. The company got nothing out of the earnings of the taxicabs in carrying the passenger. Each taxicab driver paid an initial payment of five dollars and one dollar per day thereafter to the company. Martin and other taxicab owners put signs on each car identifying it as “94 Taxi.” Objection was made that the action could not be maintained jointly against Martin and the company. The company said that Crnger was Martin’s man, not its. Martin said that Cruger was the company’s man, not his, because Cruger had, in fact, been selected by the company. The court said (page 816):
 

 “The relationship between the company and Martin is only important here insofar as it affects the relationship of Martin and the driver. However, we believe the company and Martin were engaged in a joint venture. This venture was the transportation of passengers for hire.”
 

 Champ
 
 v.
 
 Atkins,
 
 128 F. (2d), 601, was an action involving the suspension of licenses of members of a taxicab association on the ground that they had failed to pay a judgment rendered against them. The court held that such judgment was valid and unless paid, the licenses would be. suspended. The situation in the action in which the judgment had been rendered was as follows: Persons who owned cabs paid one dollar a week to the Harlem Taxicab Association. They used common telephone service and othér common service' and facilities. All the cabs were of one color. The cab which caused injury was operated by one Murchison. Champ, the injured party, brought an action against all the members of the association and recovered judgment against them upon the theory that they were engaged in a joint enterprise.
 

 
 *154
 
 See, also,
 
 E. D. Bedwell Coal Co.
 
 v.
 
 State Industrial Commission,
 
 157 Okla., 227, 11 P. (2d), 527;
 
 Sand Springs Home
 
 v.
 
 Dail,
 
 187 Okla., 431, 103 P. (2d), 524;
 
 Cunningham
 
 v.
 
 Stuckey,
 
 144 Kan., 118, 58 P. (2d), 42;
 
 Larson v. Lewis-Siman-Jones Co.,
 
 29 Cal. App. (2d), 83, 84 P. (2d), 296;
 
 United Transportation Co.
 
 v.
 
 Jefferies,
 
 211 Ind., 226, 5 N. E. (2d), 524.
 

 We conclude that where two or more persons, natural or artificial, without creating a partnership, combine their money, property or time, or all of them, in the conduct of some particular line of trade or for some particular business deal for profit, a joint adventure is thereby created. Such “joint adventure” relationship may be established in favor of third persons by operation of law through the acts and conduct of the parties even though they never intended such relationship. See
 
 Simpson
 
 v.
 
 Richmond Worsted Spinning Co.,
 
 128 Me., 22, 145 A., 250.
 

 We have examined the record and find no error prejudicial to the rights of either of the defendants-appellants, and it follows that the judgments of the Court of Appeals should be and hereby are affirmed.
 

 Judgments affirmed.
 

 Weygandt, C. J., Williams and Turner, JJ., concur.
 

 Matthias, Hart and Zimmerman, JJ., dissent.