This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Caroljean Mazza has appealed from a decision of the Summit County Court of Common Pleas that granted judgment in favor of Defendants-Appellees American Manufacturers Mutual Insurance Company and American Continental Insurance Company. We affirm.
{¶ 2} While driving along Memorial Parkway in Akron, Ohio on February 23, 2000, Appellant was struck head-on by a vehicle driven by Viola E. Lindsay ("tortfeasor"). Appellant suffered severe injuries as a result of the accident. The tortfeasor maintained a personal automobile liability policy with Nationwide Insurance Company, with policy limits of $100,000. Appellant maintained a personal automobile liability policy with Safeco, which provided underinsured motorist coverage in the amount of $50,000 and medical pay amounting to $5,000.
{¶ 3} At the time of the accident, Appellant was an employee of Cuyahoga Falls General Hospital ("CFGH"); when the accident occurred, however, Appellant was not driving a car owned or leased by CFGH, nor was she acting in the course or scope of her employment with CFGH. CFGH maintained several insurance policies. The hospital was insured by American Manufacturers Mutual Insurance Company ("AMMIC") and American Continental Insurance Company ("ACI"). As an employee of CFGH, Appellant attempted to submit claims for uninsured motorist ("UM") and underinsured motorist ("UIM") coverage to AMMIC and ACI. AMMIC consented to Appellant's release and waiver of subrogation rights in regards to offers made to Appellant by the tortfeasor's insurance provider, with the understanding that any monies recovered would be setoff from any coverage available under the AMMIC policy. Despite AMMIC's consent to allow Appellant to settle with the tortfeasor's insurance company, AMMIC, as well as ACI, denied Appellant's claim.
{¶ 4} Appellant responded by bringing a declaratory judgment action against both AMMIC and ACI seeking underinsured motorist benefits pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660. On June 26, 2002, the trial court granted judgment in favor of AMMIC and ACI, holding that: (1) as an insured covered by the AMMIC policy, Appellant was excluded from coverage because she was operating a vehicle not identified in the policy; (2) ACI's Healthcare System Liability policy was not an "automobile liability or motor vehicle liability policy of insurance," as that term is defined in R.C. 3937.18(L), and thus Appellant was not covered under such a policy; (3) Appellant was not entitled to coverage under ACI's Excess Liability policy because she was covered under the underlying policy, nor was she acting within the course and scope of her employment with CFGH when the accident occurred; and (4) Appellant was not entitled to coverage under ACI's High Limit policy because she was excluded from coverage under the underlying policy. Appellant has timely appealed, asserting four assignments of error. AMMIC has cross-appealed, asserting three assignments of error, which we have consolidated to facilitate review.
 II
{¶ 5} As an initial matter, we note that the parties stipulated to the facts upon which the trial court based its decision; therefore, the only issues before the trial court were purely questions of law. See Bennett v. Sinclair Refining Co. (1944), 144 Ohio St. 139, 148-149 ("The Ohio Rule, as deduced from the decided cases, would seem to be that where the ultimate fact is undisputed, ordinarily a question of law is presented for determination by the court [.]") An appellate court must "stand in the shoes of the trial court when reviewing appeals from judgments rendered solely on stipulated facts." Cincinnati Insurance Co. v. Slutz (Oct. 13, 1987), 5th Dist. No. CA-7109, 1987 Ohio App. LEXIS 9238, at *3-4. That is, in reviewing Appellant's four assignments of error, we must apply a de novo standard of review. See Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108 (stating that questions of law must be reviewed by an appellate court de novo); see, also, Cleveland Elec. Illum. Co. v. Pub. Util. Comm. (1996),76 Ohio St.3d 521, 523. Under the de novo standard of review, an appellate court does not give deference to a trial court's decision. Akron v. Frazier (2001), 142 Ohio App.3d 718, 721.
 Assignment of Error Number One
{¶ 6} "THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANT'S SCOTT-PONTZER CLAIM IS BARRED BY AN 'OTHER OWNED AUTO' PROVISION IN THE BUSINESS AUTO POLICY ISSUED BY AMMIC TO APPELLANT'S EMPLOYER."
{¶ 7} In Appellant's first assignment of error, she has essentially argued that the trial court erred when it concluded that she was excluded from coverage under the AMMIC policy. Specifically, she has contended that because she is an "insured," and not a "named insured," the "other owned auto" exclusion contained in the policy does not apply to her. We disagree.
{¶ 8} The definition of "insured" under the AMMIC policy
{¶ 9} Appellant has argued that, pursuant to the Supreme Court of Ohio's decision in Scott-Pontzer, supra, she is an "insured" under the AMMIC policy. In Scott-Pontzer, the court addressed whether a corporation's employees were entitled to UIM coverage under the corporation's insurance policies. More specifically, the court had to determine if the definition of "insured" included a corporation's employees. A provision in the policy defined "insured" as:
{¶ 10} "B. Who Is An Insured
{¶ 11} "1. You.
{¶ 12} "2. If you are individual, any family member.
{¶ 13} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
{¶ 14} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." Scott-Pontzer,85 Ohio St.3d at 663.
{¶ 15} In holding that an employee was an "insured" for purposes of UM and UIM coverage, the court explained:
{¶ 16} "[I]t would be reasonable to conclude that 'you,' *** also includes *** employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including to the corporation's employees." Scott-Pontzer, 85 Ohio St.3d at 664.
{¶ 17} In the instant matter, the policy between CFGH and AMMIC contains a similar provision that defines "insured" in the section of the policy entitled "OHIO UNINSURED MOTORISTS COVERAGE — BODILY INJURY." The pertinent provision states:
{¶ 18} "B. Who Is An Insured
{¶ 19} "1. You.
{¶ 20} "2. If you are an individual, any 'family member.'
{¶ 21} "3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
{¶ 22} "4. Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.'"
{¶ 23} Furthermore, the policy also provides that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations." The "named insured" is listed as CFGH. Therefore, the term "you," as used in determining "who is an insured," includes CFGH.
{¶ 24} As the definition of "insured" contained in the present policy is identical to the definition of "insured" contained in the Scott-Pontzer policy, we conclude that Appellant, as an employee of the "named insured," CFGH, is also an insured for purposes of UIM coverage under the AMMIC policy. As such, we must next determine whether Appellant is excluded from recovery because of the "other owned auto" exclusion contained in the policy.
{¶ 25} The "other owned auto" exclusion
{¶ 26} AMMIC has contended, and the trial court agreed, that even if Appellant is an "insured" under the policy, she is excluded from coverage because of the "other owned auto" exclusion contained in the section of the policy entitled "OHIO UNINSURED MOTORISTS COVERAGE — BODILY INJURY." The relevant provision of that section states:
{¶ 27} "This insurance does not apply to:
{¶ 28} "***
{¶ 29} "5. 'Bodily Injury' sustained by:
{¶ 30} "a. You while 'occupying' or when struck by any vehicle owned by you that is not a covered 'auto' for Uninsured Motorists Coverage under this Coverage form[.]"
{¶ 31} According to the above-cited provision, an insured is excluded from coverage when driving a non-covered vehicle, i.e., a vehicle that is not specifically identified in the declarations. The declarations only lists five "covered" autos: a 1988 Chevy pickup, a 1997 Dodge truck, a 1998 GMC truck, and two 1999 Plymouth Voyagers. When the accident occurred, Appellant was driving a 1997 Acura, which is a vehicle not listed in the declarations.
{¶ 32} Because Appellant was driving a non-covered vehicle when the accident occurred, it would appear that she is excluded from UIM coverage under the AMMIC policy. Appellant, however, has argued that the "other owned auto" provision does not apply to her in light of the language contained in R.C. 3937.18(J). That section provides:
{¶ 33} "The coverages offered under [R.C. 3937.18(A)] *** may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
{¶ 34} "(1) While the insured is operating or occupying a motor vehicle owned by *** a named insured *** if the motor vehicle is not specifically identified in the policy under which a claim is made[.]" R.C. 3937.18(J)(1).
{¶ 35} Moreover, the AMMIC policy defines "you" and "your" as "the Named Insured shown in the declarations." CFGH is the only party named in the declarations.
{¶ 36} Appellant has argued that R.C. 3937.18(J)(1) distinguishes between an "insured" and a "named insured." The term "insured," Appellant has contended, is not interchangeable with the term "named insured"; the latter term, she has argued, refers only to the person listed in the declarations. She has further argued that because she is an "insured," and not a "named insured," the "other owned auto" exclusion should not apply. In her brief, Appellant has contended that "[t]he 'other owned auto' exclusion authorized by R.C. 3937.18(J)(1) cannot be expanded to include any vehicle owned by any insured." (Emphasis added.) According to Appellant's reading of R.C. 3937.18(J)(1), only those vehicles owned by a "named insured," (viz., CFGH), trigger the exclusion.
{¶ 37} The appellate court in Niese v. Maag, 3rd Dist. No. 12-02-06, 2002-Ohio-6851, addressed an argument similar to the one posited by Appellant. In Niese, the insurance provider, Westfield Insurance Company, denied a claim for UIM coverage submitted by the named insured's employee, Brenton Niese, filed under the authority of Scott-Pontzer. Niese filed a complaint against Westfield seeking UIM coverage, and the insurance provider moved for summary judgment. The trial court granted the motion and Niese appealed.
{¶ 38} On appeal, Westfield argued, among other things, that the "other-owned auto" exclusion contained in the policy precluded Niese from UIM coverage. The "other owned auto" exclusion precluded coverage for "Bodily Injury sustained by: You while 'occupying' *** any vehicle owned by you that is not a covered 'auto' for Uninsured Motorist Coverage under this Coverage Form." Niese at 6. {¶ } "You," as the term was used in the "other owned auto" exclusion, referred to the "named insured" shown in the declarations. Id. Niese argued that since the term "you" referred to only the "named insured," and because he was not listed in the policy by name or title as the "named insured," the exclusion could not apply to him. The appellate court rejected Niese's argument and held that the term "you" should be applied consistently throughout the policy, without differentiating between the "named insured" and employees of the "named insured." Id. at 11. Thus, the court concluded that the term "you" also included the corporation's employees. Id. at 12.
{¶ 39} In the case sub judice, Appellant has presented the same argument as did the employee in Niese. Appellant has essentially argued that, although the Ohio Supreme Court in Scott-Pontzer defined "you" to include a corporation and its employees, the term "you" when used in the "other owned auto" exclusion should only apply to CFGH as the "named insured," and not to her as an employee of the "named insured." It appears that Appellant wants to take advantage of the inclusions contained in the AMMIC policy, but she does not want to be bound by to any of the policy's exclusions.
{¶ 40} We believe that to hold that "you" refers to both the "named insured" (i.e., the corporation) and the "insured" (i.e., the employee) only when the term is used in inclusions for coverage is not a result the Scott-Pontzer court envisioned when it concluded that the term "you" included a corporation's employees. Rather, the term "you" must be consistently applied in exclusions from coverage, as well as inclusions for coverage. Therefore, we agree with the holding in Niese. The term "you," as it is used in the "other owned auto" exclusion, applies to both CFGH and Appellant. See, also, Agudo De Uzhca v. Derham, 2nd Dist. No. 19106, 2002-Ohio-1814, at 28, appeal allowed (2002), 96 Ohio St.3d 1511.
{¶ 41} Because we reject Appellant's argument that this Court should differentiate between the "named insured" and the "insured," we must necessarily conclude that Appellant is excluded from UIM coverage under the AMMIC policy. Consequently, we find that Appellant's first assignment of error lacks merit.
 Assignment of Error Number Two
{¶ 42} "THE TRIAL COURT ERRED IN CONCLUDING THAT THE HEALTHCARE SYSTEM LIABILITY POLICY, NO. 00K079, ISSUED BY ACI TO APPELLANT'S EMPLOYER IS NOT A MOTOR VEHICLE LIABILITY INSURANCE POLICY."
{¶ 43} In Appellant's second assignment of error, she has argued that the trial court erred when it excluded coverage under the ACI Healthcare System Liability policy ("ACI Healthcare policy"). Specifically, she has argued that the ACI Healthcare policy is a "motor vehicle liability policy" from which UIM coverage arises by operation of law. We disagree.
{¶ 44} The ACI Healthcare policy provided CFGH with coverage for, among other things, medical claims and bodily injury. The policy contains an exclusionary provision by which the policy did not apply, and the company would not pay damages for, any claim arising out of "automobile liability hazard." An "automobile liability hazard" is defined as "BODILY INJURY or PROPERTY DAMAGE arising out of the ownership, operation, maintenance, use, loading or unloading, or entrustment to others of any AUTOMOBILE by an INSURED."
{¶ 45} This general exclusion for "automobile liability hazards" is subject to two exceptions: the "parking" exception and the "exclusive use" exception. The "parking" exception provides that the general exclusion does not apply when "parking an AUTOMOBILE on, or on the ways next to, premises an INSURED owns or rents, provided the AUTOMOBILE is not owned by or rented or loaned to an INSURED[.]" The "exclusive use" exception provides that the exclusion does not apply to "BODILIY INJURY or PROPERTY DAMAGE arising out of the operation of any AUTOMOBILE or mobile equipment that is used exclusively on the INSURED's premises[.]"
{¶ 46} Appellant has argued that because the policy contains two exceptions to the general exclusion for "automobile liability hazards," the policy provides sufficient liability insurance to be construed as a motor vehicle liability policy pursuant to Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541. Such a policy, Appellant has argued, is subject to R.C. 3937.18, which requires UM and UIM coverage unless specifically rejected. R.C. 3937.18(C).
{¶ 47} In Selander, the Ohio Supreme Court addressed whether "the provisions of R.C. 3937.18 apply to a policy of primary insurance which provides coverage for claims of liability arising out of the use of hired or non-owned automobiles, but is not issued for delivery with respect to some particular motor vehicle[.]" Selander, 85 Ohio St.3d at 542. The version of R.C. 3937.18(A) applied by the Selander court provided:
{¶ 48} "'No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state,' unless both uninsured and underinsured motorist coverage are provided." Selander,85 Ohio St.3d at 543.
{¶ 49} The court concluded that a policy that provides liability coverage for non-owned or hired motor vehicles is sufficient to satisfy the requirement of R.C. 3937.18. Id. at 544-545. That is, the policy is an "automobile or motor vehicle liability policy" for purposes of R.C.3937.18. Further, the court held that a policy that qualifies as an "automobile liability or motor vehicle policy" under R.C. 3937.18 is required to offer uninsured and underinsured motorist coverage and if it does not, coverage will arise by operation of law. Selander,85 Ohio St.3d at 546.
{¶ 50} In the instant matter, the trial court correctly noted that Selander was decided prior to the enactment of R.C. 3937.18(L), and, thus, is inapplicable to the present case. R.C. 3937.18(L) provides a definition of "automobile or motor vehicle policy of insurance," thereby narrowing the applicability of Selander to cases decided after the inception of R.C. 3937.18(L). R.C. 3937.18(L) provides in pertinent part:
{¶ 51} "As used in this section, 'automobile liability or motor vehicle liability policy of insurance' means:
{¶ 52} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by [R.C. 4509.01(K)], for owners or operators of the motor vehicles specifically identified in the policy of insurance."
{¶ 53} Further, "proof of financial responsibility" is defined as:
{¶ 54} "[P]roof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident." R.C. 4509.01(K)
{¶ 55} According to R.C. 3937.18(L) and R.C. 4509.01(K), an insurance policy may be deemed an "automobile liability or motor vehicle liability" policy if the "policy [serves] as proof of financial responsibility for owners or operators of the motor vehicles specifically identified in the policy." (Emphasis sic.) Gilcreast-Hill v. Ohio Farmers Ins. Co., 9th Dist. No. 20983, 2002-Ohio-4524, at 19. If the policy is not an "automobile liability or motor vehicle liability policy" then R.C. 3937.18 does not apply, and UM/UIM coverage does not arise by operation of law. See Abate v. Pioneer Mutual Cas. Co. (1970),22 Ohio St.2d 161, paragraphs one and two of the syllabus.
{¶ 56} This Court has previously addressed the application of R.C. 3937.18(L) to insurance policies similar to the ACI Healthcare policy and the effect of "parking" exceptions. In Gilcreast-Hill, an employee, Felicia Gilcreast-Hill, attempted to submit an underinsured motorist claim under the commercial general liability policy that her employer maintained with Ohio Farmers Insurance Company. Ohio Farmers denied the claim and Gilcreast-Hill brought a declaratory judgment action against the insurer seeking UIM benefits. Ohio Farmers moved for summary judgment and the trial court granted the motion on the ground that the insurance policy was not an "automobile liability or motor vehicle liability policy of insurance" because the policy did not identify a single individual automobile for which UM/UIM coverage is applicable to employees or automobiles used outside the scope of employment. The trial court also found that the policy did not serve as proof of financial responsibility for Gilcreast-Hill, and, therefore, there was no requirement to offer UM/UIM coverage.
{¶ 57} On appeal, this Court affirmed the decision of the trial court. The Ohio Farmers insurance policy excluded coverage for "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." Gilcreast-Hill at 20. The policy provided an exception to this general exclusion; the exclusion did not apply to "[p]arking an 'auto' on, or on the ways next to, premises you own or rent, provided the 'auto' is not owned by or rented or loaned to you or the insured[.]" Gilcreast-Hill at 20.
{¶ 58} Gilcreast-Hill argued that the "parking" exception to the policy exclusion extended liability coverage to the specified categories of autos, i.e., non-owned, non-rented, and non-loaned automobiles. We rejected Gilcreast-Hill's argument and held:
{¶ 59} "The phrase 'not owned by or rented or loaned to you or the insured' does not 'specifically identify' autos pursuant to the definition of automobile or motor vehicle liability. The policy cannot serve as proof of financial responsibility for 'owners or operators of the motor vehicles specifically identified in the policy,' if the policy does not specifically identify any motor vehicles. Accordingly, Ohio Farmers' CGL policy is not one which 'serves as proof of financial responsibility *** for owners or operators of the motor vehicles specifically identified in the policy of insurance' and cannot, therefore, be an automobile or motor vehicle liability policy pursuant to R.C. 3937.18." (Emphasis sic.) Gilcreast-Hill at 28.
{¶ 60} Because the policy was not an automobile or motor vehicle liability policy, this Court concluded that R.C. 3937.18 did not apply and Ohio Farmers was not required to offer UM/UIM coverage. Gilcreast-Hill at 29.
{¶ 61} The "parking exception" contained in the ACI Healthcare policy is similar in language to the exception contained in Gilcreast-Hill. The "parking" exception specifically applies to vehicles "not owned by or rented or loaned to an INSURED." And, like the exception in Gilcreast-Hill, the exception contained in the ACI Healthcare policy does not specifically identify vehicles covered by the policy. Pursuant to our holding in Gilcreast-Hill, we conclude that the "parking" exception contained in the ACI Healthcare policy does not have the effect of transforming the policy into an "automobile liability or motor vehicle liability policy of insurance," and, thus, the policy is not subject to R.C. 3937.18 on that basis. See, also, Bowling v. St. Paul Fire Marine Ins. Co., 149 Ohio App.3d 290, 2002-Ohio-4933, at 19-22; Gruelich v. Hartford, 8th Dist. No. 80987, 2002-Ohio-7229, at 50; Agudo De Uzhca v. Derham, 2002-Ohio-1814, at 54-55; Devore v. Richmond, 6th Dist. No. WD-01-044, 2002-Ohio-3965, at 47, appeal not allowed,97 Ohio St.3d 1484, 2002-Ohio-6866.
{¶ 62} The "exclusive use" exception contained in the ACI Healthcare policy applies to any automobile exclusively used on CFGH's premises. The phrase "any automobile" does not specifically identify autos as required by R.C. 3937.18(L). Thus, the same analysis that we applied when we discussed the effect of the "parking" exception also applies to the "exclusive use" exception. By failing to list the specific autos covered in the policy, the ACI Healthcare policy is not one which "serves as proof of financial responsibility *** for owners or operators of the motor vehicles specifically identified in the policy of insurance." R.C. 3937.18(L)(1). Therefore, the policy does not qualify as an "automobile liability or motor vehicle liability policy" pursuant to R.C. 3937.18(L). As such, ACI was not required to provide UIM coverage to Appellant, and we find that Appellant's second assignment of error lacks merit.
 Assignment of Error Number Three
{¶ 63} "THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANT IS NOT COVERED UNDER THE EXCESS LIABILITY POLICY, NO. 00L079, ISSUED TO HER EMPLOYER BY ACI."
{¶ 64} In Appellant's third assignment of error, she has argued that the trial court erred when it concluded that she was precluded from UIM coverage under the ACI Healthcare System Excess Liability Insurance policy. Particularly, Appellant has contended that the trial court erred by finding that the ACI Healthcare System Excess Liability Insurance policy was the only underlying policy and that coverage did not apply because she was not acting within the scope of employment at the time of her accident.
{¶ 65} The Healthcare System Excess Liability Insurance policy ("ACI Excess policy") provides that "[t]he Company will pay on behalf of any INSURED that amount of ULTIMATE NET LOSS in excess of the UNDERLYING AMOUNTS stated in the Schedule of UNDERLYING AMOUNTS which the INSURED becomes legally obligated to pay[.]" By these terms of coverage, it is clear that the ACI Excess policy is not a primary insurance policy, but is what is referred to as an "excess insurance policy." Such a policy provides vertical coverage above the limits of the insured's primary policy. American Special Risk Ins. Co. v. A-Best Products, Inc. (N.D.Ohio 1997), 975 F. Supp. 1019, 1022, affirmed, (C.A.6, 1998), 166 F.3d 1213. That is, an excess policy provides secondary coverage or "coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." American Special Risk, 975 F. Supp. at 1022, quoting Continental Marble 
Granite v. Canal Ins. Co. (C.A.5, 1986), 785 F.2d 1258.
{¶ 66} Liability coverage under the ACI Excess policy is limited. The policy provides that:
{¶ 67} "[T]his POLICY will apply only to CLAIMS: (i) that are covered by an insurance policy listed in the Schedule of UNDERLYING AMOUNTS or by a self-insured retention listed in the Schedule of UNDERLYING AMOUNTS, or that would have been so covered but for the exhaustion of the UNDERLYING AMOUNTS by payment; and (ii) that are not otherwise excluded by this Policy."
{¶ 68} "Insured" is defined as the named insured, any insured entity, any insured person, and any additional insured. "Underlying amounts" is defined as "the total amounts as stated in the Schedule of UNDERLYING AMOUNTS in excess of which this Policy is written." Thus, in order to recover under the ACI Excess policy, Appellant must be an insured party that must have first recovered under a policy listed in the "Schedule of UNDERLYING AMOUNTS."
{¶ 69} As discussed below, we find that Appellant is not an "insured" for purposes of coverage under the ACI Excess policy. Further, we find that even assuming Appellant was an "insured" under the ACI Excess policy, she would still be precluded from coverage because she was unable to recover under any policy listed in the "Schedule of Underlying Amounts."
{¶ 70} Appellant is not an "insured" under the ACI Excess policy
{¶ 71} As previously noted, "insured" includes "any INSURED PERSON." "Insured person" includes "any employee of an INSURED ENTITY other than an intern, resident, fellow, or physician; but only while acting within the scope of that person's duties as such." An "insured entity" includes "the NAMED INSURED," which is further defined as "the entity designated in Item 1 of the Declarations." CFGH is the entity listed in the declarations, and, thus, it is both the "named insured" and the "named entity."
{¶ 72} According to the policy's definition of "insured person," in order for Appellant to be deemed an "insured," she must be an employee of CFGH and she must have been acting within the scope of her employment with CFGH when the accident occurred. It is undisputed that Appellant was an employee of CFGH when she was involved in the automobile accident. However, it is also undisputed that when the accident occurred she was not acting within the scope of her employment with CFGH, nor was she driving an automobile owned or leased by CFGH. Thus, Appellant cannot be deemed to be an "insured" for purposes of UM/UIM coverage under the ACI Excess policy.
{¶ 73} By holding that Appellant was not an "insured" because she was not acting within the scope of employment when the accident occurred, we reject Appellant's argument that the "scope of employment" requirement does not apply to UIM coverage. Furthermore, we find that Appellant's reliance on Demetry v. Kim (1991), 72 Ohio App.3d 692 is misplaced.
{¶ 74} Appellant has argued, citing to Demetry, that "[j]ust as liability exclusions and restrictions cannot be imposed on UIM coverage arising by operation of law, liability exclusions cannot be imputed to the UIM coverage accepted by CFGH in the Excess Policy herein." In Demetry, the appellate court held that exclusions contained in the excess insurance policy did not apply to UIM coverage implied by law. The court stated that "[t]he parties never intended underinsured coverage to be provided by the policy. As such, there could be no negotiated exclusions intended to be implied to the underinsured coverage. The standard of clear unambiguous language has not been complied with." Demetry,72 Ohio App.3d at 698.
{¶ 75} The excess insurance policy at issue in the present case is different than the policy at issue in Demetry. UM/UIM coverage was offered and accepted in the ACI Excess policy; such coverage did not arise by operation of law. The insurer, by offering UM/UIM coverage, intended to have the terms of the policy apply to UM/UIM coverage. Because UM/UIM was both offered and accepted under the ACI Excess policy, we believe that the exclusions contained in the policy properly apply both to excess liability and to UM/UIM coverage. We base this conclusion upon the court's analysis in Scott-Pontzer.
{¶ 76} In Scott-Pontzer, the insurer failed to offer UM coverage and the umbrella/excess policy did not contain an UM coverage form that defined insureds for purposes of UM coverage. The court found that because there was no showing that UM coverage was offered and rejected, UM coverage arose by operation of law under the policy because even excess liability insurance policies must comply with R.C. 3937.18. Scott-Pontzer, 85 Ohio St.3d at 665. The court also concluded that the restriction, which only allowed coverage to those employees acting within the scope of their employment, did not apply to UM coverage. The Ohio Supreme Court held that "any language in the [umbrella/excess policy] restricting coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage." (Emphasis sic.) Id. at 666. By holding that the insurer's failure to provide UM coverage to the insured prohibited the application of the "scope of employment" requirement to UM coverage, the court in Scott-Pontzer intimated that if the insurer had offered, and the insured accepted, both UM and UIM coverage under the umbrella/excess policy then the "scope of employment" requirement would have applied to excess liability coverage and UM coverage.
{¶ 77} Scott-Pontzer and Demetry were both cases in which the insurer failed to offer UM/UIM coverage under an umbrella/excess liability policy. UM/UIM coverage arose by operation of law, and as a result, both courts concluded that the restrictions or exclusions contained in each policy did not apply to UM/UIM coverage. As this case involves an excess policy that included UM/UIM coverage by contract, we can safely conclude that the "scope of employment" requirement applies to both excess liability and UIM coverage.
{¶ 78} We also note that a Scott-Pontzer analysis is inapplicable to the ACI Excess policy. In Scott-Pontzer, the court was forced to conclude that the term "you" applied to both the corporation and its employees because the term was unclear and ambiguous. Scott-Pontzer,85 Ohio St.3d at 665. It held that "policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretation, will be construed most favorably to the insured." Scott-Pontzer, 85 Ohio St.3d at 665.
{¶ 79} Unlike the language used in the Scott-Pontzer umbrella/excess policy, however, the language used in the ACI Excess policy is clear and unambiguous. The policy clearly defines the term "insured," thus providing a detailed description of those parties covered under the contract. Therefore, this Court need not attempt to insert a definition of "insured" that includes a corporation and its employees.
{¶ 80} Appellant was not covered under the primary policies
{¶ 81} Assuming, arguendo, that Appellant is an "insured" for purposes of coverage under the ACI Excess policy, she is still precluded from UIM coverage because she was not covered under the underlying or primary policies.
{¶ 82} As discussed above, coverage under the ACI Excess policy is dependent upon proving not only that Appellant is an "insured," but that she was able to recover under any of the underlying policies listed in the "Schedule of Underlying Amounts." The policies listed in the "Schedule of Underlying Amounts" are a policy from Republic Western, a policy from Kemper Insurance (Policy Number F34034456-00) , and the ACI Healthcare System Liability policy (Policy Number 00K079). Appellant, therefore, should have been covered under both the ACI Healthcare policy and AMMIC policy before attempting to seek coverage under the ACI Excess policy.
{¶ 83} As previously discussed in Appellant's first and second assignments of error, Appellant was precluded from coverage under both the AMMIC policy and the ACI Healthcare policy, Policy Number 00K079. As Appellant was precluded from coverage under both of these policies for which the ACI Excess policy was written, she cannot recover under the ACI Excess policy.
{¶ 84} In sum, we hold that because Appellant was deemed not to be an "insured" for purposes of UIM coverage under the ACI Excess policy, and because she did not receive coverage under the underlying policies for which the ACI Excess policy was written, Appellant is not entitled to UIM coverage under the ACI Excess policy. Consequently, Appellant's third assignment of error is without merit.
 Assignment of Error Number Four
{¶ 85} "THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANT IS NOT COVERED UNDER THE HIGH LIMIT POLICY, NO. 00V079, ISSUED TO HER EMPLOYER BY ACI."
{¶ 86} In Appellant's fourth assignment of error, she has argued that the trial court erred when it concluded that she was not entitled to coverage under the Healthcare System High Limit Policy. Specifically, she has contended that, pursuant to Scott-Pontzer, Appellant is an insured for purposes of UIM coverage and, therefore, is entitled to benefits under the Healthcare System High Limit Policy. We disagree.
{¶ 87} The Healthcare System High Limit Policy ("ACI High Limit policy") provides coverage "on behalf of any INSURED that amount of ULTIMATE NET LOSS in excess of the APPLICABLE UNDERLYING AMOUNTS stated in the Schedule of APPLICABLE UNDERLYING AMOUNTS that the INSURED becomes legally obligated to pay[.]"
{¶ 88} An "insured" includes the named insured or "any person or entity insured by the IMMEDIATE UNDERLYING POLICY." "Ultimate net loss" is defined as "(A) All DAMAGES which the INSURED is legally obligated to pay as a result of a CLAIM covered by this Policy; and, (B) All CLAIM EXPENSES incurred in connection with a CLAIM covered by this Policy." The "applicable underlying amounts" is defined as "the total amounts as stated in the Schedule of APPLICABLE UNDERLYING AMOUNTS in excess of which this Policy is written." The "immediate underlying policy" is defined as the "policy designated in Item 5 of the Declarations."
{¶ 89} The ACI High Limit policy also contains an exclusion whereby the policy "does not apply to, and the Company will not pay any ULTIMATE NET LOSS including DAMAGES or CLAIM EXPENSES for, any CLAIM: (1) Based upon, arising out of, or in any way involving any CLAIM that is not covered by the IMMEDIATE UNDERLYING POLICY."
{¶ 90} Another limiting provision contained in the ACI High Limit policy provides that "[t]he Company will not be liable to pay any ULTIMATE NET LOSS for any CLAIM covered by this Policy until all APPLICABLE UNDERLYING AMOUNTS applicable to that CLAIM have been exhausted by payment."
{¶ 91} According to the terms of general coverage contained in the ACI High Limit policy, and the exclusionary provisions, a party is entitled to coverage under the ACI High Limit policy if the party (1) is an insured entitled to coverage under the immediate underlying policy; and (2) has exhausted payments under the applicable amounts listed in the declarations.
{¶ 92} We find that Appellant is not an "insured" who is entitled to coverage under the "immediate underlying policy." The "immediate underlying policy" is listed as Policy Number 00L079, or the ACI Excess policy. We concluded in our discussion of assignment of error number three that Appellant was not entitled to coverage under the ACI Excess policy because she was precluded from coverage under both the ACI Healthcare policy and the AMMIC policy. As Appellant was not entitled to coverage under the underlying policy (the ACI Excess policy), she is necessarily precluded from coverage under the ACI High Limit policy.
{¶ 93} In addition, we find that Appellant was unable to fulfill the "exhaustion" requirement. In order to trigger coverage under the ACI High Limit policy, Appellant was required to first recover under the "applicable underlying amounts," which includes the ACI Excess policy and the AMMIC policy. Because she was precluded from recovery under those policies, as discussed in assignments of error one and two, she necessarily could not exhaust the applicable amounts. Consequently, Appellant's fourth assignment of error is without merit.
 AMMIC'S Cross-assignment of Error Number One
{¶ 94} "THE TRIAL COURT FAILED TO ADDRESS WHETHER AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY IS ENTITLED TO A SET-OFF OF ALL AMOUNTS AVAILABLE FOR PAYMENT BY THE TORTFEASOR IF UM/UIM COVERAGE WAS AVAILABLE TO APPELLANT."
 AMMIC'S Cross-assignment of Error Number Two
{¶ 95} "THE TRIAL COURT FAILED TO ADDRESS WHETHER AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY'S POLICY PROVIDES EXCESS COVERAGE OR, ALTERNATIVELY PROVIDES COVERAGE, ON A PRO RATA BASIS, IN THE EVENT THAT UM/UIM COVERAGE IS DEEMED TO APPLY."
 AMMIC'S Cross-assignment of Error Number Three
{¶ 96} "THE TRIAL COURT FAILED TO ADDRESS WHETHER THE IMPUTATION OF UM/UIM COVERAGE INTO THE AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY'S POLICY VIOLATES BOTH THE OHIO AND THE UNITED STATES CONSTITUTIONS."
{¶ 97} We decline to address AMMIC's cross-assignments of error because cross-assignments of error by an appellee who has not filed a notice of appeal may be considered only when necessary to prevent reversal. Duracote Corp. v. Goodyear Tire Rubber Co. (1983),2 Ohio St.3d 160, 163-64. Where the court of appeals determines that the trial court committed no error prejudicial to the appellant in the errors assigned and argued, App.R. 12(B) requires the appellate court to refrain from consideration of any error assigned and argued in the brief of appellee on cross-appeal. Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph eight of the syllabus.
 III.
{¶ 98} Appellant's assignments of error are overruled. We declined to address AMMIC's cross-assignments of error. The judgment of the trial court is affirmed.